BERTRAND VS. ELDER ET AL.

The voluntary conveyance of a party to his wife or child, though he be indebted at the time, is *prima facie* only, and not conclusively fraudulent in respect to the claim of an existing creditor, and the presumption thus raised may be met and repelled by proof on the other side. The question of fraud must depend on all the circumstances of the case, looking to the state and condition of the grantor, the extent of the property conveyed, and the direct tendency of the conveyance respecting the claims of creditors.

And so, where at the time of a gift to the wife, the husband was largely indebted, was embarrassed, and though not insolvent, his circumstances were doubtful, and his solvency dependent, in a great degree, upon the skilful management of embarrassed mercantile operations, the gift is fraudulent and void as against the prior creditors of the husband.

*Appeal from Pulaski Chancery Court.*

Hon. H. F. FAIRCHILD, Chancellor.

HEMPSTEAD, for the appellant.

It seems to us that the statute, itself, settles the question, that a voluntary conveyance in favor of a wife cannot be held good against a subsisting debt. *Gould's Dig.*, 765, 767.

What Bender desired to do—to secure these lots against the pressure of creditors—to provide a home for himself and family that could not be touched or molested by creditors—was precisely what the law did not allow him to do. And confessedly the conveyance to the wife having been made with *that intent;* it became in the language of the law, a conveyance "*contrived with the intent to hinder, delay or defraud creditors,*" and, as such, void against all creditors and purchasers *prior and subsequent. Gould's Digest,* 547.

For if a conveyance thus designed, and having that object in view, is not fairly characterized as made with intent to delay or hinder creditors, within the meaning of the statute of frauds, then it would be almost impossible to prove that intent in any case; and so the statute would become ineffectual, and never reach the mischief intended to be remedied. *Godell vs. Taylor, Wright,* 82.

An existing indebtedness is sufficient to avoid the conveyance. And here the debt was large. In *Reade vs. Livingston,* 3 *Johns. Ch. Rep.,* 500, the doctrine was distinctly announced by Chancellor KENT, that a voluntary settlement or conveyance by a person indebted at the time, is presumed fraudulent as against all existing debts, without regard to their amount or the extent of the property settled, or to the circumstances of the party. He held that fraud in the voluntary settlement was an inference of law, and ought to be so, so far as it concerned *existing debts;* but that as to *subsequent* debts, there was no such necessary legal presumption, and there must be proof of fraud in fact. And Chancellor Kent refers to various cases of high and undisputed authority to sustain him. *Shaw vs. Standysh,* 2 *Vernon* 326; *St. Amand vs. Barbara, Comyn's Rep.,* 255; *Jones vs. Marsh, Cas. Temp. Talbot,* 63; *Russell vs. Hammond,* 1 *Atk.* 15; *Stileman vs. Ashdown,* 2 *Atk.,* 477; *Brown vs. Jones,* 1 *Atk.* 190; *Wheeler vs. Caryl, Amb.,* 121; *Hylton vs. Biscoe,* 2 *Vesey, sr.,* 304. *Naim vs. Prowse,* 6 *Vesey, jr.,* 759; *Campion vs. Cotton,* 17 *Vesey, jr.,* 271, 272; *George vs. Milbanke,* 9 *Vesey,* 193; *Ward vs. Shallet,* 2 *Vesey,* 18; *Meddlecome vs. Marlow,* 2 *Atk.* 519;

*Taylor vs. Jones*, 2 *Atk.*, 600 ; *Walker vs. Burrows*, 1 *Atk.*, 93 ; 1 *Madd. Ch. R.* 420 ; *White vs. Sansom*, 3 *Atk.*, 410 ; *Beaumont vs. Thorp*, 1 *Vesey*, 27 ; *Townsend vs. Windham*, 2 *Vesey*, 1 ; *Fitzer vs. Fitzer*, 2 *Atk.*, 511 ; *Stephen vs. Olive*, 2 *Bro. Ch. R.* 90 ; *Doe vs. Routledge, Cowp.*, 705 ; *Kidney vs. Conssmaker*, 12 *Vesey, jr.*, 136, 156 ; *Montague vs. Lord Sandwich, Ib.*, 148 ; *Holloway vs. Mellurd*, 1 *Madd. Ch. Rep.*, 414 ; *Bennett vs. Bedford Bank*, 11 *Mass.*, 421. See, also, 2 *Kent's Com.*, 441, 442, *and notes ; Sexton vs. Wheaton*, 8 *Wheat*, 242 ; *Jackson vs. Stewart*, 5 *Cow.*, 67 ; *Van Wyck vs. Seward*, 18 *Wend.*, 392, 399; 4 *Dev.*, 197.

GARLAND & RANDOLPH, for appellee.

It appeared in this case that Bender's obligation to St. Johns' College, upon which the judgment under which Bertrand purchased was rendered, was a voluntary gift. If this be so, even assuming the deed from Watkins to Mrs. Bender to have been a voluntary conveyance by Bender to her, Bertrand cannot defeat it. We take the position that Bertrand occupies the place of St. Johns' College, and that the college, being a subsequent creditor—her debt, or the subscription, not being due until after the conveyance—if a creditor at all, could not question the conveyance to Mrs. Bender, unless she showed it was made with intent to defraud her : and refer to the following cases, as establishing the broad doctrine that a deed fraudulent as to creditors can only be impeached by them, and is good as to all others. *Cushwa vs. Cushwa*, 5 *Md. R.*, 44; *Thompson vs. Moore*. 36 *Maine*, 47 ; *Whitland vs. Freeland*, 26 *Miss.*, 481; *Curtis vs. Price*, 1 *Vesey, jr.*, 103; *Malin vs. Garnsey*, 16 *John.*, 189; 4 *Binn.* 109; 7 *J. R.*, 161 ; 19 *Ark. R.*, 650; 25 *Barb.* (*N. Y.*) *Rep.*, 428 ; 18 *Ill.*, 511.

But if the court should consider Bertrand in the attitude only of a subsequent purchaser with notice, then it is equally clear that he cannot set aside the conveyance to Mrs. Bender. *Jackson vs. Town*, 4 *Cowen*, 600 ; *Rick vs. Ham*, 14 *Mass. R.*, 139; *Cathcart vs. Robinson*, 5 *Peters' U. S. S. C. R.*, 280; 4 *Kent's*

*Com.* 463, 464 , 1 *Story's Eq. J. sec.* 371 ; *Huldnal vs. Wilder,* 4 *McCord* 294.

It is well settled that if a husband purchase land, pay the purchase money, and cause a deed, on a consideration of affection merely, to be made to his wife, she has a valid title as against him, and all subsequent creditors and purchasers with notice. *Kingdon vs. Bridges,* 2 *Vernon* 67 ; *Lucas vs. Lucas,* 1 *Atkins* 270 ; *Walker vs. Burrows, Ib.* 93 ; *Lush vs. Wilkinson,* 5 *Vesey, jr.* 384 ; *Glaister vs. Hewer,* 8 *Vesey, Jr.,* 195 ; *Rider vs. Kidder,* 10 *Vesey, Jr.* 460 ; *Sexton vs. Wheaton,* 8 *Wheaton R.* 229 ; 1 *Roper's Husb. and Wife,* 54 ; 2 *Story's Eq. J., sec.* 1375 ; 1 *Bright's Husb. and Wife* 29, 33 ; *Smith vs. Yell,* 4 *Ark. R.* 293 ; *Dyer vs. Bean,* 15 *Ib.* 519.

To avoid the operation of the principle last stated, Bertrand has set up in his bill the facts, that Bender, at the making of the deed, was engaged in the mercantile business, that he then was considerably embarrassed by debt, and owed the obligation to St. Johns' College, and he relies upon the case of *Reade vs. Livingston,* 3 *Johns. Ch. R.* 481, to prove that the deed to Mrs. Bender was fraudulent as against the college.

We will observe, that it is not shown that Bender owed *any debt* at the time of the execution of the deed from Watkins. Even the College debt was not due till more than eleven months after that time. So supposing the doctrine of *Read vs. Livingston* to be correct, it will not help Bertrand. But the authority of this case has been completely overturned, and the learned chancellor who decided it, at a subsequent time, admitted his doctrine to be too stern for the present times. 2 *Kent's Com., p.* 422, *note a.* And the doctrine now recognized, both in the English Courts and the American, is that the mere fact of a man being indebted, is not sufficient to invalidate a voluntary conveyance, if he was solvent at the time. *Lush vs. Wilkinson, supra* ; *Shears vs. Rodgers,* 4 *Brown & Adolphus* 362 ; *United States Bank vs. Housman,* 6 *Paige Ch. R.* 226 ; *Van Wyck vs. Seward, Ib.* 62 ; *Jackson vs. Peck,* 4 *Wend.* 300 ; *Hinde vs. Longworth,* 11 *Wheat. R.* 199 ; *Howard vs. Williams,* 1 *Bailey Eq.*

32

575, 585, *and note ; McElwel vs. Sutton*, 2 *Ib.* 128 ; *Seward vs. Jackson*, 8 *Cowen*, 406 ; 2 *Greenleaf's Cruise, Book* 4, *Ch.* 28, *sec.* 15, *and note* (1), *secs.* 17, 18, .19 ; *Dardenne vs. Hardwick*, 4 *Eng*, 482 ; *Dodd vs. McCraw*, 3 *Eng.* 83 ; *Smith vs. Yell*, 8 *Arks.* (3 *Eng.*) 470 ; *Burkey vs. Self*, 4 *Sneed*, (*Tenn.*) 121.

If the intention to defraud his creditors is not established by the fact of the deed having been made to his wife, Bender is not shown to have had any such intention when he procured it to be made to her.

The testimony shows clearly that he has always, up to the present time, been solvent. The fact is not denied in Bertrand's bill, or in any of the pleadings. It is not pretended that the conveyance to Mrs. Bender was actually made to hinder, delay, or defraud his creditors, or that it has had that effect. Bertrand contends that the law presumes such to have been the case. In fact it is not shown that he had any creditors at the date of the deed. This fact it was incumbent on Bertrand to prove, if it existed. *See above authorities.* As to subsequent debts, their existence can afford no .evidence of fraud in the conveyance ; and fraud must be proved, the law will not presume it. *Dardenne vs. Hardwick, supra ; Irons vs. Reyburn*, 11 *Ark.* 378 ; *Hempstead vs. Johnson*, 18 *Ark.* 123. But if a presumption of fraud had arisen it is repelled by the facts disclosed in the case, such, for instance, as Bender's solvency and his payment of his debts. 1 *American Leading Cases, p.* 56, *etc.,* 1 *Robinson's Va. R.* 500, 536 ; 4 *McCord*, 295 ; 1 *Bailey's Eq. R.* 220.

Mr. Justice COMPTON delivered the opinion of the court.

On the 23d of November, 1848, George C. Watkins, who was then the owner of lots 8 and 9 in block 35, of the city of Little Rock, sold them to David Bender for $2500 00, and executed to him a bond for title. The purchase money having been paid, Watkins and wife, by deed dated the 15th of April, 1852, conveyed the lots to Mrs. Charlotte Bender, the wife of David Bender. The deed was thus made at the request of the hus-

band, and though it recites the payment of the purchase money as having been made by Mrs. Bender, the testimony abundantly shows that it was in fact paid by the husband, and that the conveyance to the wife was voluntary.

At the time the deed was made, Bender was indebted to St. Johns' College, in the sum of $500 00, by bond dated the 24th of March, 1852, due twelve months after that date, and on which judgment was recovered against him on the 14th of July, 1857, for $659 50, with cost of suit. Under an execution issued on this judgment, the lots were sold by the sheriff at public sale, on the 3d of May, 1858, and Charles P. Bertrand became the purchaser.

Mrs. Bender died on the 30th of November, 1857, without children by Bender, but having Marcus M. Elder, a son and only heir by a former husband, her surviving, who claimed the lots as her sole heir, and who, soon afterward, instituted an action of ejectment for their recovery, and obtained judgment by default.

Bertrand then exhibited the bill in this case to have the title set up by Bender declared invalid, and his own established and quieted; and the question submitted to us, on appeal to this court, is, whether, under the circumstances developed in the record, the voluntary conveyance to the wife can be sustained against Bertrand, he having purchased the premises at execution sale under a judgment against the husband at the suit of an existing creditor.

There is some diversity of judicial opinion touching the rights of creditors, where a voluntary disposition of property has been made by the debtor. The counsel for Bertrand relies on *Reade vs. Livingston*, 3 *Johns. Ch. Rep.* 479, which was a voluntary settlement by the husband of property upon the wife, and in which Chancellor Kent held, that the voluntary conveyance of a party indebted at the time of its execution is presumed to be fraudulent with reference to the claim of an existing creditor, and that such presumption is an inference of law, not open to explanation, and which no circumstances will be permitted

to repel. He says: "The conclusion to be drawn from the cases is, that if the party be indebted at the time of the voluntary settlement, it is presumed to be fraudulent in respect to such debts, and no circumstances will permit those debts to be affected by the settlement, or repel the legal presumption of fraud. The presumption of law in this case does not depend upon the amount of the debts, or the extent of the property in settlement, or the circumstances of the party. There is no such line of distinction set up or traced in any of the cases. The attempt would be embarassing, if not dangerous to the rights of creditors, and prove an inlet to fraud. The law has, therefore, wisely disabled the debtor from making any voluntary settlement of his estate, *to stand in the way of existing debts.*" Though the decision in this case is not unsupported, the decided preponderance of authority, both in this country, and in England, is against it, and establishes a rule less rigid, and, in our opinion, more consistent with a sound interpretation of the statute of frauds.

In *Hinde's Lessee vs. Longworth,* 11 *Whea.* 213, the voluntary conveyance of certain real estate by Thomas Doyle, to his son, was sought to be set aside by persons claiming as judgment creditors upon antecedent debts; and the rule, as now firmly established in the Supreme Court of the United States, was laid down in the following language: "A deed from a parent to a child, for the consideration of love and affection, is not absolutely void as against creditors. It may be so under certain circumstances; but the mere fact of being in debt to a small amount, would not make the deed fraudulent, if it could be shown that the grantor was in prosperous circumstances and unembarrassed, and that the gift to the child was a reasonable provision according to his state and condition in life, and leaving enough for the payment of the debts of the grantor. The want of a valuable consideration may be a badge of fraud, but it is only presumptive, and not conclusive evidence of it, and may be met and rebutted by evidence on the other side." Chief Justice MARSHALL, in *Hopkirk vs. Randolph et al.,* 2 *Brock.*

refused to set aside the voluntary conveyance of a father to his daughter, as fraudulent, though the father was indebted at the time of the conveyance, it appearing that his fortune was ample, and the gift to the daughter comparatively trivial. Commenting on the statute against fraudulent conveyances, he said : "But as this intent" (to hinder and delay creditors) " is concealed within the bosom of the actors, it would be the duty of the court to infer it from the character of the transaction and as the equity of the creditors is generally stronger than that of mere volunteers, the court ought to lean to the side of the creditor, and to consider every gift or voluntary conveyance as coming within the statute, the fairness of which was not conclusively proved. Even independent of the statute, gifts or voluntary conveyances, which obviously defeated the claim of a creditor, would be considered as fraudulent, so far as regarded him. The donee, therefore, would always be required to prove the fairness of his title. If he be not a purchaser for a valuable consideration, it would be incumbent on him to show a case, not only without taint, but free from suspicion. If the circumstances of the gift be such that, according to any reasonable probability, it might originate in any impure motive, or might, in fact, prove injurious to creditors, by withdrawing a subject to which they had just pretensions, the fair construction of the act would comprehend it. But a construction which should, under all circumstances, comprehend every gift, merely because it was voluntary, might derange the ordinary course of society, and produce much greater injustice than it would prevent." And in another part of the opinion, referring to *Sexton vs. Wheaton*, 8 *Wheat.* 229, a case in which the chief justice himself delivered the opinion of the court, he remarked : " The Supreme Court of the United States has said ' that in construing the statute of the 13th Eliz., courts have considered every conveyance, not made on consideration deemed valuable in law, as void against previous creditors.' This is a general proposition concerning the extent of the English decisions, not a decision of the court itself declaring that every gift, however

trivial, is at any distance of time, and under any circumstances to be avoided by a creditor. · * * The general proposition was all which could be in the mind of the court, since the case was one of a subsequent purchaser, and did not lead to any minute investigation of the distinctions which might possibly exist in cases of gifts made by persons indebted at the time." But whatever doubt might have been entertained as to the doctrine in that court, growing out of the expression of the chief justice in *Sexton vs. Wheaton*, none has existed since the subsequent decision in *Hinde's Lessee vs. Longworth*, from which we have above quoted.

In *Salmon vs. Bennett*, 1 *Con.* 525, a conveyance to a child in consideration of natural love and affection, made without fraudulent intent, at a time when the grantor was free from embarrassment, the gift constituting but a small part of his estate, and being a reasonable provision for the child, was held valid against an existing creditor. In this case, it was said by SWIFT, Ch. J.: "Where there is no actual fraudulent intent, and a voluntary conveyance is made to a child in consideration of love and affection, if the grantor is in prosperous circumstances, unencumbered, and not considerably indebted, and the gift is a reasonable provision for the child according to his state and condition in life, comprehending but a small portion of his estate, leaving ample funds unencumbered for the payment of the grantor's debts, then such conveyance will be valid against creditors existing at the time. But though there be no fraudulent intent, yet if the grantor was considerably indebted and embarrassed at the time, and on the eve of bankruptcy; or if the value of the gift be unreasonable, considering the condition in life of the grantor disproportioned to his property, and leaving a scanty provision for the payment of his debts, then such conveyance will be void as to creditors." And per GOULD, J.: "Evidence of indebtedness at the time at least, and, as I conceive, of indebtedness amounting, or approximating to embarrassment, must be shown. For, if any degree of indebtedness, however small, would defeat such conveyance; they would,

virtually, be *per se* fraudulent; since no individul, perhaps, or, at least, hardly any one, in the community, is at any time absolutely free from debt."

The decision in *Reade vs. Livingston*; has not been followed in New York. On the contrary, by a series of subsequent adjudications in the highest courts of that State, the rule that a conveyance, or settlement, in consideration of blood and affection, by one indebted at the time, is *prima facie* only, and not conclusively fraudulet t, is now well settled. *Seward vs. Jackson*, 8 *Cow.* 406; *Jackson vs. Town*, 4 *Cow.* 599; *Van Wyck vs. Seward*, 6 *Paige*, 62 ; *Bank of the United States vs. Housman*, *Ib.* 526. The same doctrine prevails in Maryland, Kentucky, Tennessee and South Carolina. *Williams et al. vs. Banks*, 11 *Mary. Rep.* 198; *Atkins vs. Phillips*, 1 *Mary. Ch. Rep.* 507; *Worthington et al vs. Shipley*, 5 *Gill* 449; *Taylor vs. Eubank*, 3 *A. K. Marsh.* 239, 241; *Burkey vs. Self et al.*, 4 *Sneed,* 121 ; *Jacks vs. Tanno*, 3 *Dessaus.* 1. It was also decided in the High Court of Chancery, and in the Supreme Court of Maryland, that when the indebtedness of the grantor, and the voluntary character of the deed are established—the deed being then deemed *prima facie* fraudulent—the *onus* is on the party claiming under the deed to show, affirmatively, the circumstances which shall repel the presumption of fraud thus raised. *Sewell vs. Baxter and wife*, 2 *Mary. Ch. Dec.* 447; *Bullet vs. Worthington*, 3 *Ib.* 99; *Williams et al. vs. Banks*, 11 *Mary. Rep.* 198. In *Bullett vs. Worthington*, *supra*, Chancellor JOHNSON said "The party who sets up a voluntary conveyance in opposition to the claims of pre-existing creditors, is required to show, by evidence which leaves no reasonable doubt upon the subject, that the means of the grantor, independent of the property conveyed, are abundantly ample to satisfy them all. If there be a reasonable doubt of the adequacy of his means, or if his property be so circumstanced, that delays, difficulties and expense must be encountered before it can be made available to his creditors, then, as I conceive, the voluntary conveyance must fall, because then it has the effect to hinder and delay his creditors." These remarks of the

chancellor were quoted with approbation by the Supreme Court in *Williams et al., vs. Banks, supra,* and the principles asserted, re-affirmed.

In *Dodd vs. McCraw,* 3 *Eng.* 83, JOHNSON, C. J., said: "The mere fact of an existing indebtedness, does not render a voluntary conveyance absolutely fraudulent or void in law, as against the creditors whose debts were previously contracted, if there was no intention on the part of the grantor to delay or defraud his creditors." Though the deed in that case was assailed by a subsequent creditor, *Van Wyck vs. Seward* and *Salmon vs. Bennett* were relied on as authority, and the case may be fairly regarded as, at least, indicating the opinion of the CHIEF JUSTICE upon the point now before the court.

It may be remarked, without attempting a review of the conflicting cases in England, that the latest decisions there do not sanction the rigorous doctrine of Chancellor KENT, in *Reade vs. Livingston.* In a case precisely in point, it was said: " There has been a little exaggeration in the arguments on both sides, as to the principle on which the court acts in such cases as these: on one side it has been assumed that the existence of any debts at the time of the execution of the deed, would be such evidence of a fraudulent intention as to induce the court to set aside a voluntary conveyance, and oblige the court to do so under the statute of Elizabeth. I cannot think the real and just construction of the statute warrants that proposition, because there is scarcely any man who can avoid being indebted to some amount: he may intend to pay every debt as soon as it is contracted, and constantly use his best endeavors, and have ample means to do so, and yet may be frequently, if not always, indebted in some small sum. There may be a withholding of claims, contrary to his intention, by which he is kept indebted in spite of himself: it would be idle to allege this as the least foundation for assuming fraud or any bad intention. On the other hand, it is said that something amounting to insolvency must be proved to set aside a voluntary conveyance: this, too, is inconsistent with the principle of the act, and with the judg-

ments of the most eminent judges"—Per Lord LANGDALE, in *Townsend vs. Westacott*, 2 *Beavan*, 345. In the subsequent case of *Gale vs. Williamson*, 8 *Mees. & Wels.* 409, determined in the Exchequer, the same principle was decided. ROLFE, BARON, at page 410, says: "It is a mistake to suppose that the statute makes void, as against creditors, all voluntary deeds. All that it says is, that the practice of making covinous and fraudulent deeds had prevailed, and, therefore, all feoffments, gifts, etc., of any lands or goods and chattels, as against the persons whose actions, debts, etc., by such covinous and fraudulent devices and practices, shall be disturbed, hindered, delayed or defrauded, shall be void. The courts, in construing the statute, have held it to include deeds made without consideration, as being *prima facie* fraudulent, because necessarily tending to delay creditors. But the question in each case is, whether the deed is fraudulent or not; and to rebut the presumption of fraud, the party is surely at liberty to give in evidence all the circumstances of the transaction."

The principle, as we apprehend, to be extracted from the decisions in England and America, is, that the voluntary conveyance of a party to his wife or child, though he be indebted at the time, is *prima facie* only, and not conclusively fraudulent, in respect to the claim of an existing creditor, and that the presumption thus raised may be met and repelled by proof on the other side. The question of fraud must depend on all the circumstances of the case, looking to the state and condition of the grantor, the extent of the property conveyed, and the direct tendency of the conveyance respecting the claims of creditors.

This we understand to be the conclusion reached by Mr. Justice STORY, as indicated in his work on Equity jurisprudence, where the cases on the question are fully and critically reviewed, (*Story's Eq.*, vol. 1, sec. 365;) and such Chancellor KENT concedes to be the tendency of the English and American decisions, and expresses the fear that the doctrine in *Reade vs. Livingston*, and of those English Chancellors on whom it rested, is

too stern for the present times. 2 *Kent Com., marg., p.* 442, (*in note,*) 8*th edition.*

In the case before the court, it appears that David Bender, at the date of the deed sought to be impeached, was engaged in the mercantile business in the city of Little Rock; and, besides the real estate conveyed to his wife, seems to have had no property other than his capital in trade. In his answer, he admits that he was then " embarrassed somewhat on account of his indebtedness, and to provide a home for himself and family, in the event of further embarrassment," or " too great pressure by his creditors," he caused the conveyance to be executed to his wife·; but states that " he had, at all times, sufficient means, if he could make the same available, (which he hoped to do,) to meet all his liabilities." The answer of Elder admits that Bender "was much involved in debt :" denies that the conveyance was made to defraud creditors, and insists that Bender, though " he owed much money," was not insolvent, but had ample means for the payment of his debts. These are certainly strong admissions, and upon them alone, it is not easy to perceive how the conveyance to Mrs. Bender could be sustained. Testimony was taken however, and we will proceed briefly to notice it

One of the witnesses testified " that he acted as clerk and book-keeper in Bender's mercantile establishment, from April, 1849, to August, 1854, and that at all times during that period, Bender had sufficient means to pay his debts, if properly managed." How much he owed, the witness could not state, though he knew him to be much indebted at the time he left the establishment, in August, 1854. Other witnesses, whose means of information were less favorable, testified, in general terms, that he was regarded as solvent, though slow to pay, and at times embarrassed. The precise amount of Bender's debts, and the exact extent of the means left for their payment, after the conveyance in question, do not appear. The conclusion may be fairly drawn, however, from all the evidence in the record, that, at the time of the conveyance, Bender was largely

indebted, was embarrassed, and though not insolvent, his circumstances were doubtful, and his solvency dependent, in a great degree, upon the skillful management of embarrassed mercantile operations. Under such circumstances, even though the admission of Bender indicating an actual fraudulent intent be left out of view, the law requires us to declare the conveyance to Mrs. Bender fraudulent and void, as against the prior creditors of her husband, and we so hold.

So much of the decree as dismisses the cross-bill of Elder is affirmed, and so much thereof as dismisses the original bill must be reversed, and a decree entered here in accordance with the prayer of the original bill, and certified to the court below.

Mr. Justice FAIRCHILD did not sit in this case.