MILES v. MONROE.

Opinion delivered November 21, 1910.

1. GIFT—VALIDITY.—A gift, executed by delivery and not fraudulent as to creditors, is as binding and irrevocable as a sale would be. (Page 537.)

2. SAME—EFFECT AS TO EXISTING CREDITORS.—A voluntary transfer of property by one in debt is presumptively fraudulent as to creditors then existing; and if the debter is insolvent or the gift will necessarily hinder, · delay or defraud the donor's existing creditors, then the gift is conclusively fraudulent. (Page 537.)

3. SAME—VALIDITY.—Where at the time he makes a gift, the donor owes no debts, or a small amount in comparison to the property retained by him, the gift is valid. (Page 538.)

4. SAME—VALIDITY AS TO SUBSEQUENT CREDITORS.—To avoid a gift, a subsequent creditor must show that it was made with the actual intent to defraud him. (Page 538.)

5. SAME—SUBSEQUENT CREDITORS—SUBSEQUENT INSOLVENCY.—A gift cannot be shown to be void as to a subsequent creditor by proof merely that the donor subsequently became insolvent. (Page 539.)

6. SALE OF CHATTEL—CONSIDERATION OF MARRIAGE.—A transfer of property in consideration of an engagement to marry is based upon a valuable consideration, but such transfer must have been made before the engagement was entered into. (Page 539.)

7. INSTRUCTION—AMBIGUITY—FORM OF OBJECTION.—An objection to an ambiguous instruction must be specific. (Page 540.)

Appeal from Howard Circuit Court; *James S. Steel,* Judge; affirmed.

*W. P. Feazel* and *W. C. Rodgers,* for appellant.

1. The evidence does not sustain the verdict. The facts that Mr. Wade was riding the mare a large part of the time, that the two horses were kept together at his house all the time when he was not riding, that appellee never assessed the mare as her property nor did any one for her, and Wade's claim to divers persons that he owned the mare, are inconsistent with a claim of a gift. There was nothing in the conduct of the parties to put the bank on inquiry whether the mare was appellee's property. 76 Ark. 457; 77 Ark. 147; 78 Ark. 62; 84 Ark. 263; 46 N. Y. 684; 78 N. E. 5. In order to effect a gift, the donor must part with all control whatever of the thing given, completely and for all time.

2. The first instruction given at appellee's request is erroneous in that it makes the fact of delivery and possession conclusive of her claim.

3. Instruction No. 2, given for appellee, gives undue emphasis to the rule of evidence that admissions against interest are competent evidence. It is improper for a court to dilate upon

a mere rule of evidence in its instructions. 62 Ark. 286, 312; 75 Ark. 76, 86; 78 Ark. 87, 93.

4. The third instruction given at appellee's request is self-contradictory in stating that the owner of property may give it to whom he chooses, regardless of creditors or children, and later stating that if possession was given and the gift was not in fraud of creditors, the jury could find for the plaintiff.

5. Instructions 2 and 3, requested by appellant, should have been given. A party to a contract cannot derive any benefit therefrom where he does not in good faith intend to perform it. If appellee did not intend to perform the alleged contract of marriage with Wade, she cannot claim the property as against those who, in good faith, have advanced money to him. 129 S. W. 530, 531.

6. If Wade was in debt at the time the alleged gift was made, such gift was unlawful, and appellee's claim must fail. The fourth instruction requested by appellant should have been given. Kirby's Digest, § 3658. Where marriage is the consideration for an agreement, there is no consideration until the marriage is performed. 10 Ark. 53, 60; 124 S. W. (Ark.) 124, 126. Nor is the appellee aided by reason of the fact that debt to the bank is a subsequent transaction. The statute, *supra,* says that such conveyance shall be void as to prior and *subsequent* creditors.

*Sain & Sain* and *T. D. Crawford,* for appellee.

1. The testimony was legally sufficient to sustain the verdict.

2. Appellant's objection to the first instruction overlooks that element of the instruction which tells the jury that *if Wade bought the mare for appellee* and delivered the animal to her in pursuance of that purpose, then there was a consummated gift. If the transaction was a gift, there is no evidence tending to prove that Wade was guilty of any actual or intentional fraud in making it, and subsequent creditors could not be heard to complain. 50 Ark. 42; 56 Ark. 253; 1 Moore, Fraud. Conv. § 3. A gift accompanied by delivery and subsequent peaceable possession can no more be revoked than a sale. 14 Ark. 505. An antenuptial conveyance or settlement of property, made in consideration of marriage, is upon a good and valuable con-

sideration, and is valid as against creditors of the grantor. I Moore, Fraud. Conv. § 25; 20 Cyc. 504; Rodgers, Dom. Rel. § 161.

3. There is no merit in appellant's contention that the second instruction given at appellee's request lends undue influence to the rule of evidence that admissions against interest are competent. Such instructions are not prejudicial where the whole charge to the jury directs them to consider all the facts and circumstances proved in the case. 93 Ark. 316.

4. Appellant's objection to the third instruction given is not tenable here. Ambiguity in an instruction should be met by a specific objection. Moreover, it could not have been prejudicial because there is no proof that the gift was in fraud of creditors.

5. Instructions 2 and 3, requested by appellant, were properly refused. There is no proof that appellee ever refused to marry Wade. No contention that her engagement was fraudulently entered into. In case of such contention the acts constituting fraud must have been specifically alleged and proved. 77 Ark. 355; 34 Ark. 63.

Her title based on the consideration of marriage did not fail by reason of the death of Wade before the marriage was consummated. 4 App. Div. (N. Y.) 22, 26; 5 Allen 454, 81 Am. Dec. 758.

6. The fourth instruction requested by appellant was properly refused. (1) There is no evidence that Wade was indebted at the time of the gift, and that such indebtedness still existed. (2) The mere fact that he was in debt at the time was not sufficient, in the absence of proof of intentional fraud, to set aside the gift in favor of a subsequent creditor. 56 Ark. 253; Rodgers, Dom. Rel. § 165. (3) It being admitted that a promise of marriage is a valuable consideration, the doctrine as to voluntary conveyances does not apply.

FRAUENTHAL, J. This was an action of replevin instituted by the plaintiff below, Hessie Monroe, to recover the possession of a sorrel mare. Both the plaintiff and defendant claimed title to the mare from a common source, by acquisition thereof from one J. M. Wade. The plaintiff claimed the property by virtue of an alleged gift made to her by Wade on April 7, 1909, and the defendant by virtue of a sale made under a mort-

gage executed by Wade on September 4, 1909. The plaintiff and said Wade on April 7, 1909, and for some years prior therto resided near Perryville in the State of Tennessee. The plaintiff is a young lady, who at that time and up to the date of the trial lived with and as a member of the family of her father, W. M. Monroe. J. M. Wade was a widower, who with his two children made his home with said W. M. Monroe for some years prior to the above date. The testimony on the part of the plaintiff tended to prove that J. M. Wade bought the mare in controversy, and on April 7, 1909, gave and delivered her to the plaintiff at the home of her father in the State of Tennessee. The testimony tended further to prove that Wade at that time was the owner of a number of head of mules and other property and moneys aggregating several thousand dollars, and there is no testimony that he owed at that time any indebtedness, except probably $400. On or about April 15, 1909, W. M. Monroe, with the plaintiff and the other members of his family, and J. M. Wade moved to Nashville in the State of Arkansas; and from that date until the date of his death on October 26, 1909, J. M. Wade lived with said Monroe. The testimony tended to prove that the mare was brought from Tennessee by the father of plaintiff at the time the said parties moved to Arkansas, and was shipped with some of his and Ward's stock; and from that time was claimed by and remained in the possession of plaintiff, and was recognized by Wade as her property. On September 4, 1909, J. M. Wade executed to the Bank of Mineral Springs a mortgage on a lot of sawmill property, a large number of head of stock, amongst which was the mare in controversy, and on other personal property, in order to secure a note for $2,000 made on that day. It appears that J. M. Wade became ill on October 21, and died on October 26, 1909, and that default was made in complying with the provisions of said mortgage. Thereafter the mortgagee took said property from the possession of plaintiff and against her protest, and the same was sold by virtue of the mortgage, and at such sale the defendant became the purchaser. Upon her cross examination the plaintiff testified that she and J. M. Wade were engaged, and she supposed that this was the reason why he gave her the mare, and that she accepted it upon that consideration. The

defendant introduced testimony tending to prove that three or four months prior to the death of J. M. Wade plaintiff stated that she would commit suicide before she would marry him.

During the progress of the trial the defendant offered to prove the financial condition of J. M. Wade after he moved to Arkansas; and also offered to prove that defendant had purchased the mare in controversy under a sale made by order of the chancery court in a suit foreclosing said mortgage, but to which suit plaintiff was not a party; but the lower court refused to permit the introduction of any of the above offered testimony.

At the instance of defendant the court, among other instructions, gave the following to the jury:

"No. 5. You are instructed that a valid gift cannot be made without delivery of the thing given. And, in order that the change of possession be sufficient in law, it must be complete and unequivocal and with the intent at the time that the donor or giver is to lose all control over the thing given for all time to come. The transaction must be understood by and between both parties as forever depriving the giver of the thing given and all authority, right of possession and control over the same. And, if this state of things is not shown by a preponderance of the evidence, your verdict must be for the defendant."

The court refused to give the following instruction requested by defendant:

"No. 4. The jury are instructed that J. M. Wade in his lifetime could not lawfully have given to the plaintiff the mare in controversy if he was at the time indebted and said indebtedness is still unsatisfied. So, if you find from the evidence that he was in debt at the time he is alleged to have given the mare in controversy to the plaintiff, and said indebtedness still exists, the gift is unlawful, and the plaintiff cannot recover."

And at the request of the plaintiff it gave the following instruction: "No. 3. You are instructed that any one has a right under the law to give his property to any person he desires to in preference to his children or creditors; and the fact that J. M. Wade afterwards mortgaged said mare to the Bank of Mineral Springs would not defeat this plaintiff from recovering said mare, provided you believe that there was a gift and

delivery of possession during the life of J. M. Wade, provided you believe that said gift was not in fraud of creditors."

The defendant asked the court to give the following instructions which were refused:

"No. 2. You are instructed that if you believe from the evidence that J. M. Wade gave the mare in controversy to the plaintiff in consideration of her promise of marrying him and that there has been no marriage, then the gift must fail."

"No. 3. If you believe from the evidence that J. M. Wade gave the mare to the plaintiff in consideration of her promise of marrying him and that she did not intend to do so, then you will find for the defendant."

The jury returned a verdict in favor of the plaintiff, and the defendant has appealed to this court.

Under the pleadings and the testimony that was legally admissible the sole question that is involved in this case is whether or not J. M. Wade made a valid gift of the mare in controversy to plaintiff on April 7, 1909, and before they moved to the State of Arkansas. For, if such a valid gift was made, then Wade could not defeat her right to the property by the mortgage which he subsequently executed thereon. In order for such a gift to have been valid, it was necessary that it should have been fully executed between the parties themselves, and must not have been fraudulent, either as to existing or subsequent creditors. Such a gift was valid and binding between the parties if it was the purpose and intent of Wade to make a gift of the property to plaintiff and in pursuance of that intention he did actually make a complete and unconditional delivery of the property to her. In such event the title to the property as between the parties passed to the plaintiff, and the gift became as irrevocable as a sale of the property by him to her would have been. *Ryburn* v. *Pryor,* 14 Ark. 505; *Williams* v. *Smith,* 66 Ark. 299.

It was incumbent upon the plaintiff to prove that Wade did voluntarily transfer to her the title and deliver to her the possession of the mare; and if he did this, although without any consideration, the plaintiff became the owner of the property. We think that there was sufficient testimony adduced on the trial of this case relative to the acts, conduct and declarations

of Wade to sustain the finding of the jury that he made a gift of the mare to the plaintiff.

We do not think that the voluntary transfer of the mare by Wade to plaintiff was invalid or fraudulent as to his creditors, under the facts of this case. A voluntary transfer of property by one in debt is presumptively fraudulent as to creditors then existing, and if the debtor is at the time of such gift insolvent or if the gift is of such an amount or made under such circumstances as that it will necessarily hinder, delay or defraud the existing creditors of such donor, then such voluntary transfer becomes conclusively fraudulent and invalid as to such existing creditors. But if the donor owes no debts at the time of such gift, or of such small amount in comparison with his assets that he retains property amply sufficient, to pay such antecedent debts, then the gift will be perfectly valid. *Smith* v. *Yell,* 8 Ark. 470; *Bertrand* v. *Elder,* 23 Ark. 494; *Chambers* v. *Sallie,* 29 Ark. 407; *Rudy* v. *Austin,* 56 Ark. 73.

In the case at bar there was no evidence tending to prove that said Wade owed any debts at the time the gift was made except probably $400, and there was testimony proving that he owned property in addition to the mare in controversy exceeding $2,000 in value.

Nor was there any testimony adduced or offered upon the trial of the case tending to show that the gift was made in fraud of subsequent creditors. In the case of *Compton* v. *Schaap,* 56 Ark. 253, it is said: "To avoid a voluntary conveyance, a subsequent creditor must show that it was made with the actual intent to defraud. He cannot, like a prior creditor, raise a presumption of such intent by merely showing that the grantor was in debt at the date of the conveyance." Before a voluntary conveyance can be set aside at the instance of subsequent creditors, the evidence must show that such conveyance was made with the actual intent to defraud such creditors. *Toney* v. *McGehee,* 38 Ark. 427; *Driggs & Co.'s Bank* v. *Norwood,* 50 Ark. 42.

There was no testimony adduced upon the trial of the case at bar tending to show that at the time Wade gave the mare to plaintiff he contemplated incurring any further indebtedness or that he made the gift with the intent to defraud any sub-

sequent creditor. Under the undisputed testimony adduced, he was at the time of the gift in solvent circumstances and the owner of considerable property. This property he continued to own until the date of his death, and the fact that several months after he made the gift and after he had moved to Arkansas he incurred debts would not be sufficient to show that he made the gift of the mare to plaintiff with the fraudulent intent. thereby to defeat such subsequent creditors in the collection of their debts.

It follows that the court did not err in refusing to give said instruction number 4, asked by defendant, because there was no testimony that he owed debts at the time that the gift was made which were still unpaid; and for the further reason that the indebtedness which he did owe was small in amount in comparison with his assets, and the gift did not result in his insolvency or his inability to pay such indebtedness. Nor did the court err in refusing to permit defendant to prove the financial condition of Wade after he moved to Arkansas for the reason that there was no testimony tending to show that at the time Wade made the gift in Tennesee he did so with intent to defraud any subsequent creditor, and such offered testimony would not have. been sufficient to prove such intent.

It is urged by counsel for appellant that the court erred in refusing to give the above instructions numbers 2 and 3, requested by the defendant. But these instructions were, we think, abstract, and were not applicable to the issue involved in the case or the testimony given on the trial. The sole issue involved in the trial of the case was whether or not Wade had made a valid gift of the mare to plaintiff. Marriage in contemplation of law is a valuable consideration upon which to support a transfer of property, and, while it cannot be expressed in dollars and cents, it is still a consideration of actual value.' A transfer of property made, therefore, in consideration of a promise to marry is not a gift, but a sale, and is as effective and binding as a sale founded on any other valuable consideration. 1 Page on Contracts, § 299; *Prewit* v. *Wilson,* 103 U. S. 22.

But, before it can be said that such transfer is based upon the consideration of marriage, it must be made in consideration of the promise to marry, and, therefore, prior to the engage-

ment of marriage; for if it was made after such engagement was consummated it would not be an inducement to or a consideration of the contract of marriage. *Chambers* v. *Sallie, 29* Ark. 407.

In the case at bar there was no testimony tending to prove that the mare was transferred to plaintiff in consideration of her promise to marry Wade. The only testimony relative to that phase of the case was given by the plaintiff upon her cross examination. She testified that she and Wade were engaged, and that she supposed that this was the reason why he gave her the mare, and that she accepted it upon that consideration. According to this testimony, she acquired the property after the engagement and contract of marriage was made, and not in consideration of her making the contract of marriage. Her statement that she accepted the mare upon the consideration that they were engaged was in effect only a statement by her that she accepted it because they were engaged.

The above instruction number 3, given at the request of plaintiff, was ambiguous. The defendant should have advised the lower court of his specific objections to this instruction, and this he did not do. If he had done so, the court would no doubt have so worded the instruction that it would have set forth in more definite and certain language the correct principle of law therein announced. Having failed to make specific objection to this instruction, he cannot now complain.

Upon an examination of the whole case, we think the real and sole issue in this case was fairly submitted to the jury, and we do not find that any prejudicial error was committed in the trial.

The judgment is affirmed.