## PYLAND v. GIST.

Opinion delivered July 2, 1928.

*Caraway, Baker & Gautney*, for appellant.
*Block & Kirsch*, for appellee.

MEHAFFY, J. The appellees brought suit against J. E. Vaughan and Belle Vaughan, his wife, and Minnie Pyland, alleging that J. E. Vaughan and Belle Vaughan executed and delivered to J. P. Gist their promissory note for the sum of $1,000, due three years after date, and bearing interest at the rate of 8 per cent. per annum from date until paid, and that, to secure the payment of said note, J. E. Vaughan and wife made, exe-

cuted and delivered to Roy Grim, as trustee for J. P. Gist, a deed of trust conveying the northeast quarter of the northwest quarter of section 26, township 16 north, range 7 east, in the Eastern District of Craighead County, Arkansas. It was alleged that Minnie Pyland, a niece of J. P. Gist, induced him to deliver the note to her for the purpose of collecting only. That she failed and refused to surrender the note and deed of trust, but claimed that Gist had given it to her.

Vaughan and his wife filed answer, admitting execution of the note, and their readiness and willingness to pay, but that they were unable to determine to whom payment should be made, and refused to pay until the rightful ownership and possession of the note was determined. Minnie Pyland answered, admitting the relation between herself and plaintiff, Gist, admitted that she had the note and mortgage in her possession, but denied that it was given her for the purpose of collection, and asserted that it was given to her as a gift, and that it was duly assigned to her as such.

J. P. Gist, who was more than 80 years old, testified, in substance, that he lived in Dunklin County, Missouri; that he could not read and write, never went to school a day in his life; that Minnie Pyland was his niece, the daughter of his brother; that he gave her the note so she could collect it; that she asked him to give it to her, and that he did not care who collected it, just so it was collected. She was to collect it and pay it over to him, and had never done that. He had lost his hearing, or could not hear very well.

J. F. Miller testified that he knew Polk Gist, and had known him for more than 30 years; that he could not hear well for several years, and for the last four or five years had been very deaf, and that for the last few years his mind had not been very good; that this had existed for six or seven years. Witness also knew Minnie Pyland, and was present when there was a conversation between her and Senator Ely and his son. Ely and his son are practicing lawyers in Missouri, and had

a case in Missouri against Mrs. Pyland. Mr. Ely asked Mrs. Pyland about the land deal, and asked her how she happened to have the note, and she told Mr. Ely that her uncle, Polk Gist, lived in Missouri, and had turned it over to her to collect because she lived in Arkansas, and instructed her to deposit it in the Bank of Monette after she had collected it.

J. E. Vaughan testified that he owed the debt, and that Minnie Pyland, in a conversation with him, had said the note was in the bank, and that it belonged to her, and that no one was going to beat him out it. That she further said they have been taking his money just as fast they could get it, and this is one time they are not going to beat him out of it. Witness' wife was Gist's niece, the same relation to Gist that Mrs. Pyland is.

Allen Cluster testified that he was present when J. E. Vaughan had a conversation with Mrs. Pyland, and that Mrs. Pyland said: "Whenever it is to be paid, it is to be paid in my name, so he will not be beat out of it"; and further said, "he gave it to me for collection."

Tom Ely, Jr., testified that he was present when his father had the conversation with Minnie Pyland, and that Mrs. Pyland said that Mr. Gist lived in Missouri, and this land was in Arkansas, and he gave her this note to collect.

Robert Braden testified that he had known Gist practically all his life, and that he helped to make the transfer of the note by Mr. Gist to Mrs. Pyland; he identified the note, and at the time of the transfer he wrote the typewritten part and his name there, and that Mr. Gist said he wanted to give the note to Mrs. Pyland; that Gist could not write; there was very little conversation; Gist was hard of hearing. Mrs. Pyland and Gist came into the bank, and she stated that Mr. Gist wanted to transfer the note to her, and witness wrote the indorsement on it and explained it to Mr. Gist. Gist asked the witness if he could give the note to Mrs. Pyland, and witness asked him if that was what he wanted to do, and he said it was. He could not write,

and witness wrote his name. Mrs. Braden and Braden witnessed the mark.

Mrs. Braden testified about witnessing the mark, and that nothing was said about taking the note for collection.

Macey Pyland testified, in substance, that her husband was Mrs. Pyland's son; she knows Mr. Gist, and knew about the note from Vaughan, and knew that Vaughan had taken the bankrupt law, and Mr. Gist said that he had given the note to Minnie and she could make Vaughan pay it because she had a deed of trust to the land. She heard the conversation between Vaughan and Mrs. Pyland. She was also at Mrs. Pyland's when Mr. Ely and Mr. Miller came there, and heard that conversation, and Mrs. Pyland did not say she had the note for collection; she did say that "for collection" is not on that note.

Mrs. Minnie Pyland testified that Gist gave her the note, signed it over to her at the bank, and gave it to her, and that she left the note at the bank. That when he gave her the note she thanked him and told him that he would not want for a penny of it, that she would collect it. There was nothing said and no agreement or understanding that she would collect it for him or give it back to him. That at the time he signed the note over, Mr. Braden asked him did he understand that he was transferring the note, and he said yes.

There were some other witnesses who testified, but the evidence is conflicting, and we deem it unnecessary to set it out in full.

A promissory note or any chose in action or other evidence of debt, together with security, may be the subject of a gift *inter vivos,* and appellant contends that the proof conclusively shows that this was a gift *inter vivos;* that it is shown by the indorsement of the note and by the testimony of the Bradens and Mrs. Pyland, and that none of them are contradictory as to any fact, circumstance or detail of the transaction that took place at the time the gift was completed.

Gist testified that he gave the note to his niece for collection, and his testimony is corroborated by other witnesses. Mrs. Pyland testified that it was given to her absolutely and not for collection, and there is some corroboration of her testimony. It is therefore a question of fact, and the finding of the chancellor is conclusive here, unless it is against the preponderance of the evidence. This court has said: "While the numerical weight of the testimony is against the appellee, we do not think there is a preponderance of the evidence against the finding of the chancellor in holding that there was not a delivery of the deed with the intent to pass title. We have said that the question of delivery is generally one of intention as manifested by acts or words, and that there is no delivery unless there is an intention on the part of the actors in the transaction to deliver the deed in order to pass the title immediately to the land conveyed, and that the grantor shall lose dominion over the deed. As we have already said, we do not think the evidence in this case shows a delivery of the deed with the intention that the grantor shall not thereafter have any control or dominion over it. It is a question largely of intention, to be determined by the evidence, and we think the chancellor's finding is supported by a preponderance of the evidence." *Hardin* v. *Russell,* 175 Ark. 30, 298 S. W. 481.

"In appeals from the chancery court trials are *de novo,* but the findings of fact made by the chancellor are allowed to stand unless they are clearly against the preponderance of the evidence." *Henry* v. *Irby,* 175 Ark. 614, 1 S. W. (2d.) 49; *Doane* v. *Rising Sun Mining Co.,* 139 Ark. 605, 213 S. W. 399; *Hyner* v. *Bordeaux,* 129 Ark. 120, 195 S. W. 3; *Midyett* v. *Kerby,* 129 Ark. 301, 195 S. W. 674; *Houser* v. *Burchart & Levy,* 130 Ark. 178, 197 S. W. 28; *Ferguson* v. *Guydon,* 148 Ark. 295, 230 S. W. 260.

As this court has repeatedly held, to make a valid and effective gift *inter vivos* there must be an intention to transfer title to the property as well as a delivery by

the donor and an acceptance by the donee. There must be an intention on the part of the donor to relinquish the right of dominion on the one hand and to create it on the other, and delivery must be not only of possession but also of the dominion and control of the property, and it must appear that it was the intention of the donor to transfer the title. In this case Gist swears positively that he did not intend to give the note to Mrs. Pyland, but that he gave it to her for collection, and the chancellor found that it was not a gift, and his finding is supported by a preponderance of the evidence, and the decree is therefore affirmed.