WAID *v.* WAID.

4-3289

Opinion delivered January 15, 1934.

*J. F. O'Melia,* for appellant.

*Utley & Hammock,* for appellee.

McHANEY, J. Appellee, husband of appellant, brought this action against her and the First National Bank of Fort Smith, to recover the sum of $3,640 and the accrued interest thereon, the total amounting to $4,211.11, which she had deposited in a savings account in said bank, in

her maiden name of Ethel Marie Mivelaz. The parties to this action were married January 1, 1928. At that time appellee was under a "try out" contract of employment as traveling salesman with the R. Hoe Company, manufacturers of printing machinery and supplies, by which he received traveling expenses only, but in June or July he began receiving a salary in addition to expenses. Fort Smith was his headquarters during 1928, where they lived with appellant's sister. In December he was transferred to New Orleans, became sales manager of a large territory, and was given a salary of $350 per month plus traveling expenses. Some time after their marriage, appellee opened a checking account in the First National Bank in their joint names, giving either the right to check thereon. Salary and expense checks from his employer were sent to him at Fort Smith, were received by her in his absence, and she was instructed by him to deposit same to said account after deducting such sums as she might need for her living expenses in his absence. Some of the funds she received were deposited according to instructions, but, from August 28, 1928, to March 3, 1930, she withheld from deposit in that account $3,640 of said money sent her, and deposited same to her own credit under her maiden name, Ethel Marie Mivelaz. From May, 1929, to December, 1932, there was deposited in the checking account in their joint names the sum of $8,750.57, but he received no salary or expenses after February 15, 1932, as he suffered a serious and permanent injury in an automobile wreck January 18, 1932, and did no work thereafter, and it appears from the bank records that $2,427.50 was deposited in said account from April 11 to December 23, 1932.

Appellant defended the action on the ground that the money deposited to her credit was a gift from her husband. The court found against her contention, and she has appealed.

Substantially the only question presented is one of fact. Did appellee give her the money she deposited to her credit in a savings account? There is no conflict in the testimony, except on the issue of gift or no gift. It

is undisputed that all the money deposited in both accounts came from his earnings. It is also undisputed that he knew nothing about this account in her maiden name until the bank charged him with an overdraft, and, upon investigation of this matter, discovered same. Appellant says he gave her the money, and is corroborated to some extent by her two sisters and a niece. Appellee denies that he gave her the money to be kept as her own, but that it was to be deposited in the checking account. In this he is corroborated to some extent by the facts and circumstances surrounding the transaction. The fact that she deposited it to her credit in her maiden name; that she did not deposit it in the bank where she had another savings account, the Merchants' National; that she did not tell him that she had done so, all tend somewhat to show an effort to hide or conceal the matter, and to corroborate him that there was no gift. The court found the issue in favor of appellee, and we are unable to say the finding is against the preponderance of the evidence.

Moreover, if this is a gift at all, it is a gift *inter vivos* or *donatio inter vivos*. In *Stifft* v. *W. B. Worthen Co.*, 176 Ark. 585, 3 S. W. (2d) 316, we said: "Gifts *inter vivos* or *donationes inter vivos* are gifts between the living, and are perfected and become absolute during the lifetime of the donor and the donee. * * * The elements necessary to constitute a valid gift *inter vivos* were stated by this court in *Lowe* v. *Hart,* 93 Ark. 518, 125 S. W. 1030, to the effect that the donor must be of sound mind, must actually deliver the property to the donee, must intend to pass the title immediately, and the donee must accept the gift." We think the evidence in this case fails to satisfy this rule. There was no intention on his part to pass the title to her immediately or at all. He intended that the money be deposited in their joint checking account, over which he had some control. While she did not draw any checks on that account, she could have done so without accounting to him therefor.

It follows that the decree must be affirmed.

Johnson, C. J., and Kirby and Butler, JJ., dissent.

Johnson, C. J., (dissenting). The applicable rule on appeal in chancery cases is that this court tries and de-

termines such cases *de novo,* and the findings of fact by the chancellor are allowed to stand, unless clearly against the preponderance of the testimony. *Leach* v. *Smith,* 130 Ark. 465, 197 S. W. 1160; *Ellis* v. *District,* 142 Ark. 73, 218 S. W. 389; *Teague* v. *Hutto,* 132 Ark. 180, 200 S. W. 805.

The converse of this rule is aptly illustrated in *Leach* v. *Smith, supra,* wherein this court said:

"When chancery causes are taken up for determination by this court, the judicial balance, so to speak, stands at perfect equipoise. One side of the scales is labeled 'appellant,' the other 'appellee.' The testimony in the record is examined and all that is incompetent is discarded. That which remains for appellant is put on his side, and that for the appellee on his side, and if the scales are evenly balanced, or so nearly so as to leave the judges in doubt as to where lies the greater weight, then the decision of the court below is persuasive and is allowed to stand as the correct result."

The majority opinion hold that the testimony in the instant case is so evenly balanced that the chancellor's findings tip the scales in favor of appellee, therefore affirm the case. To this finding and determination I can not agree. The testimony in the case is to the following effect.

Appellee Ben W. Waid testified that he and appellant were married January 1, 1928. "The first salary drawn after marriage was in June or July, 1928; we lived in my wife's family home at Fort Smith; my salary and expense checks came to our home; the money was deposited in the First National Bank of Fort Smith and was subject to my check. I trusted my wife to make the deposit of my salary, but did not intend that she should claim any of it as her separate property." In December, 1928, appellee was ordered to New Orleans and thereafter lived there. After January, 1929, appellee lived in New Orleans and came to Fort Smith only occasionally, and, during this period of time, his salary and expense checks came to him there. He visited his wife at Fort Smith as often as possible, sometimes twice a month and sometimes the visits were three months

apart; that in January, 1932, he was injured; that witness was taken off the payroll of his employer February 15, 1932, thereupon witness moved back to Fort Smith and started a chicken ranch. When witness began to improve his chicken ranch, he first discovered that a part of his money had been deposited in his wife's name. On cross-examination witness testified that his checks continued to go to his wife at Fort Smith until March, 1930, thereafter he received the checks at New Orleans, but continued to send money to his wife at Fort Smith; that, as he now remembers, he gave his wife at various times $325 for her personal needs; that after March, 1930, witness earned $350 a month up to February, 1932. Witness further testified, that he never stated in the presence of Jessie Dawson that he had given the money in controversy to his wife; that he had never made any such statement to Mrs. Newman. Witness had drawn all the checks that were drawn against his account and, in addition thereto, made an overdraft of $325. Mr. Simms, a witness on behalf of appellant, testified that he was vice-president of the First National Bank of Fort Smith and knows the parties; that Mrs. Waid effected a checking account in his bank subject to the check of Mr. Waid also; but the savings account is in the name of Ethel Marie Mivelaz; the savings account reflects a credit to Ethel Mivelaz for the sum of $4211.11, which includes interest to date. The statement made and exhibited to Mr. Simms' testimony reflects that Mrs. Waid's savings account was opened August 27, 1928, and shows a total deposit aggregating $3,640, the last deposit being made March 3, 1930. The difference between the present status of the account is due to accumulated interest. In rebuttal appellee testified that he did not know that deposits were made in a savings account in the name of Ethel Marie Mivelaz until the filing of this suit; that he did not tell Mrs. Waid to make such deposits and did not give his consent thereto. That there is not now any change in the friendly affectionate relationship between himself and wife. The checking account reflects a total deposit of $8,750.57. This account was open by witness'

authority. This was all the testimony introduced in behalf of appellee.

The testimony on behalf of appellant was, to the following effect, that she and appellee were married on January 1, 1928, and thereafter lived in her home in Fort Smith. Appellee sent his checks to her for deposit with instructions to put so much money in checking account —the rest he gave me—made a special gift to me. These checks would average $175 every two weeks and expense checks were from $75 to $100 a week. "Appellee opened the checking account at the First National Bank, and I did not authorize him to open it in my name." Witness put all checks sent her in the checking account except what appellee gave her. Witness' maiden name was Ethel Marie Mivelaz. All deposits made in the savings account were given witness by appellee on the date of deposit. Appellee gave witness no money after March 3, 1930. After March 30, 1930, witness did not receive any checks from appellee. Witness has lived in Fort Smith during all her married life. Appellee has resided in New Orleans since March, 1930. Witness has never drawn any money out of the savings or checking accounts. Witness had her name taken off the checking account when it became overdrawn. Appellee sent witness $50 or $100 after 1930. Witness deposited the money which appellee gave her in the name of Ethel Marie Mivelaz. Witness has never mixed her money with that of appellee's, and this is the only money which was so deposited.

On cross-examination, witness testified, that all appellee's gifts to her were in the form of money. Appellee, if he were not at home, would call her over the telephone and tell her what to do with the money. The savings account was my gift money. Witness never asked appellee for money when he failed to give it to her. Witness has income property in Fort Smith from which her expenses are paid.

Marguerite Mivelaz testified, in behalf of appellant, as follows:

That appellant and appellee, after their marriage in 1928, lived in witness' and appellant's home in Fort

Smith; that witness had often heard appellee say: "Here, Ethel, is a check and I give it to you with all my heart and to do what you please with it," and appellant would put the check in her account in the bank. Witness has heard such statements from appellee numbers of times. After 1929, appellee lived in New Orleans and did not give appellant any more money. Mrs. Newman, another witness on behalf of appellant, testified, that she was a sister to appellant and Marguerite Mivelaz and lived in the same block in Fort Smith and witness had heard appellee say that he had given appellee money; that she heard him make this statement on two occasions.

Jessie Dawson, a witness on behalf of appellant, testified that she lived in an adjoining house to appellant and was with her continuously; that appellee continuously boasted that he had given money to appellant and made fun of her clothing and said she didn't have to dress that way; that she had money of her own and he boasted that he had given it to her. Witness has heard these boasts from him in the last year or so. Appellee did not state how much money he had given appellant, just said that he had given her gifts and wondered why she did not dress better. This was all the testimony introduced in said cause.

The testimony here presented, when measured by the rule cited *supra*, of necessity must be found to preponderate in favor of appellant. Under long-established rules of this court, the burden of proof in the whole case is upon appellee. His testimony is entitled to no greater weight than that of appellant. Viewed in this light, the testimony of appellee and appellant should be determined of equal weight, therefore the decree should have been in appellant's favor. But this is not all. Three other witnesses strongly corroborated the testimony of appellant as to the gift. This testimony should not be ignored as is done by the majority. This court is now evading the responsibility of trying this case *de novo;* it is attaching the same credence to the chancellor's findings of fact, heretofore and now given to findings of juries. This overturns established rules of this court heretofore thought to be impregnable.

The testimony above recited demonstrates an unusual condition of affairs—the husband suing the wife to recover money deposited in her name—merely because it was earned by the husband during coverture. Moreover, it is unusual in that the wife furnished the house and living expenses out of her own separate estate at all times since the marriage, never at any time spending one dollar of the husband's earnings in this regard. Also this record reflects that appellee has earned and deposited on a checking account in a Fort Smith bank $8,750, every dollar of which has been expended by appellee for things other than living expenses for himself and wife; in addition to this, after March, 1930, appellee received all of his earnings at New Orleans and disposed of same for his own maintenance and convenience. It is unusual that a wife would remain in Fort Smith, earning her own living during every day of coverture, yet assert from the witness stand that she had affection for her husband.

But one question arises on this record for decision, namely: Did appellee give this $3,660 to his wife prior to its deposit in bank?·

I assert that this record demonstrates that he did. This is true, first, because it is perfectly natural for a husband to do just what appellant says her husband did —gave her this money. This gift constituted only approximately 30 per cent. of the total amount deposited in this Fort·Smith bank and, when viewed in this light, was a reasonable award to his wife for her efforts in assisting him in accumulating money and property. I assert that this circumstance corroborates appellant that this deposit was a gift from appellee. Moreover, the testimony of Marguerite Mivelaz and Mrs. Newman, to the effect, that the husband made gifts to his wife of his earnings should not be disregarded merely because they are appellant's sisters; if such be so, however, Jessie Dawson testified that appellee had boasted to her of the gifts he had made to his wife, and this record does not reflect that this witness has any bias or prejudice in her favor.

On the other hand, the only testimony supporting the chancellor's finding of fact, that his deposit was not a gift, is the testimony of appellee, and the effect of his testimony is merely a denial that such gift was effected. I assert, without fear of contradiction from this record, that the great preponderance of the testimony is to the effect that this deposit was a gift from appellee to appellant and should be so determined by this court.

Since when, until now, has any court decided on the uncorroborated testimony of a husband, that a wife is not entitled to have or hold any of the property and money accumulated during coverture? Since when, until now, has any wife been required to furnish her own home and living expenses during coverture, then denied the right to participate in the husband's accumulations to the extent of even $1?

Although the dower statutes of the State have no direct application, neither are they analogous to the question here under consideration. They do demonstrate, however, that the wife is not wholly without legal rights. Not, until now, is the wife treated as a mere chattel of the lord and master, the husband, by this court.

The case should be reversed and the cause remanded with directions to enter a decree according to the decided preponderance of the testimony.

I am authorized to say that Justices KIRBY and BUTLER concur with the views here expressed.