Merna W. GIBSON and Cecil L. GIBSON
*v.* Larry BOLING, Special Administrator

81-50 622 S.W. 2d 180

Supreme Court of Arkansas
Opinion delivered October 12, 1981
[Rehearing denied November 9, 1981.]

54

*Davis, Bassett, Cox & Wright,* by: *Tilden P. Wright, III;* and *Oscar Fendler,* for appellants.

*Bradley & Coleman,* by: *Douglas Bradley,* for appellee.

JOHN I. PURTLE, Justice. This is the second appeal from the Chancery and Probate Courts of Craighead County in the matter of the estate of Herman Gibson, deceased. We reversed the first case and remanded for a new trial. See *Boling, Special Administrator* v. *Gibson,* 266 Ark. 310, 584 S.W. 2d 14 (1979). The trial court, in the present case, held the disputed Certificates of Deposit were a part of the estate of the decedent and the widow was entitled to take a dower interest since she had elected to take against the will.

Appellants, sons of the decedent, make several arguments for reversal and each point will be set out separately below. We do not find reversible error and affirm the trial court.

Herman and Nora Gibson had been married more than 20 years at the time of his death of October 12, 1976. The present contest is between the decedent's two sons by a prior marriage, Merna W. Gibson (known as Wayne Gibson) and Cecil L. Gibson, and the only child of Nora Gibson, Donald Ray King. Donald King was the son of Nora Gibson by a prior marriage. The widow died between the first and second trial. The CDs were purchased by Herman Gibson during his marriage to Nora and were issued to Herman Gibson or Merna W. Gibson or Cecil L. Gibson. None of the various issuing banks required the purchaser to designate the payees or owners in writing or to execute the signature card or any other written document in connection with the CDs. Neither is there any evidence that the decedent sought to execute any such authorization in writing.

On July 28, 1976, Herman Gibson, along with his son, Wayne Gibson, went to the lockbox at the First National

Bank and Trust Company of Jonesboro and withdrew the CDs. The lockbox at the First National was in the name of Herman Gibson and Nora Gibson. After the CDs were taken from the lockbox at the First National the decedent handed them to his son Wayne and told him the CDs now belonged to Wayne and his brother Cecil. The father accompanied the son across the street to the Citizens Bank where the son went into the area of the lockboxes and rented a box at the Citizens Bank, and signed the signature card after his name only was typed on the card. The father did not accompany the son into the area where the boxes were rented. Wayne took both keys to the box at the time he rented it. There is no evidence that he ever furnished Herman Gibson a key, and the box was not entered until October 15, 1976, three days after the death of Herman Gibson.

The will of Herman Gibson was admitted to probate; and, when the inventory was filed, it did not disclose the $100,000 in CDs which are the subject of this lawsuit. The widow, Nora, filed suit in the chancery court to determine the ownership of the CDs. At the first trial the chancellor held the CDs were an inter vivos gift to Wayne and Cecil Gibson. Upon remand, the chancellor (not the same chancellor as heard the first case) held that the CDs were part of the Herman Gibson estate because there was no valid inter vivos gift.

There is no dispute over the fact that Wayne Gibson took possession of the CDs on July 28, 1976, and that he placed them in a box he had rented. However, subsequent to the time Wayne Gibson rented the box and took a receipt, which had been lost, H. Gibson's signature appeared on the card for Wayne Gibson's lockbox at the Citizens Bank although his name was never typed on the card. The manner in which H. Gibson's name was added to the card is highly disputed. Wayne states he never authorized the addition of any other name to the card. He steadfastly maintains he rented the box in his own name and in his own right and that his father never had authority to enter the box nor did he have a key. Contradicting this testimony is that of the vault attendant, Christabel Elliott, who testified she rented the box to Wayne Gibson and that on the same date Wayne told

her his father would be in later to sign the card. This testimony became so highly controversial that at the first trial one of appellants' solicitors resigned and testified that he was present when Ms. Elliott stated she did not know how the name "H. Gibson" became affixed to the card. The solicitor testified that Ms. Elliott stated it must have been the girl who relieved her that caused the name to be added. This testimony by the solicitor resulted in a remand for a new trial. The solicitor's partner had remained in the proceeding, and it was upon these grounds the case was remanded. The Gibson brothers both confirmed the testimony of solicitor Moore. At the trial Ms. Elliott testified that Wayne Gibson stated that his father would be in later to sign the card. She also testified that H. Gibson came in a few days later, identified himself, and told her his son Wayne had rented a box and wanted him to come by and sign the card. She said she permitted him to do so as it was in keeping with Wayne Gibson's instruction at the time he rented the box. She further stated that H. Gibson explained to her that he did not yet have a key to the box but that he would be transferring some things over from the First National at a later date. However, the box was not entered by anyone until after the death of H. Gibson.

The card for the box at Citizens Bank revealed the signature of "H. Gibson" to be genuine. This signature was added after the initial transaction. The receipt issued to Wayne after Herman's death listed the holder of the box as "Gibson, Wayne or H." Cecil Gibson's name was typed on the card and he signed it on October 15, 1976, subsequent to the death of H. Gibson. Between July 28, 1976, and October 12, 1976, several interest checks on the CDs were mailed to Herman Gibson. The interest payments were payable in the same order as were the CDs. It is not disputed that Herman Gibson cashed the checks and used the proceeds. On remand, a new trial was held in probate and chancery courts based primarily on the record of the previous trial. At the beginning of the second trial the court stated:

> At this time, with agreement of counsel for all parties, the Court will try this matter upon the transcript of the record in the Chancery Court of Craighead County,

Western District, Cause No. E-77-228, which was consolidated with and tried at the same time with Probate Cause in the Probate Court of the Western District of Craighead County, being P-76-190, and was appealed as Cause No. 78-146, Boling vs. Gibson, in the Supreme Court of Arkansas. Now, the Court will disregard all of the material in the record which is irrelevant, immaterial, incompetent and has now been abandoned. As the Court understands it, the real issues are the question of ownership of eight (8) Certificates of Deposit, which total $108,038.14. Either side may introduce any additional testimony or evidence, together with the previous transcript, will constitute the record of this cause for appeal. Does that give you an opportunity, Mr. Bradley, to do whatever you desire to complete a record?

After moving that certain exhibits introduced at the first trial be excluded, the appellants' solicitor elicited testimony from the former solicitors for the Gibson brothers. The testimony of solicitor Moore was essentially the same as it had been at the first trial. His testimony was directed at discrediting the testimony of Christabel Elliott. He testified as to the contradictions made about the opening of the lockbox at Citizens Bank by Wayne Gibson. Solicitor Michael Gibson testified not only to the testimony previously discussed relating to the contradictory statement of Christabel Elliott but also that he had written the will for his grandfather, Herman Gibson, and proffered testimony that he had instructed his grandfather on how to handle the CDs.

After the briefs were filed each of the solicitors moved to strike parts of the other party's abstract and brief. We recognize that this case was a heated case all the way through. In fact, it has been to this court, in one form or another, at least three times prior to this appeal. We grant appellants' request to strike that portion of the appellee's brief which implies that the former solicitors for the appellants were dishonest and committed what amounted to subornation of perjury. We think solicitor for appellee went entirely too far in this respect. However, we do not strike the other portions of the record requested to be stricken by the

appellants but consider them only if relevant. This should not occur again. Furthermore, the appellants' statement of the case was entirely too long and somewhat argumentative; however, we do not resort to the extreme remedy of striking the brief, pursuant to Rule 9 (e) (2), Rules of Supreme Court.

We think it appropriate to briefly discuss Ark. Stat. Ann. § 67-552 (Repl. 1980) at this point in the opinion. This statute deals with certificates of deposit issued in two or more names. Section (a) of the above-quoted statute requires the person opening such account to make a designation in writing to the banking institution concerning the certificate to be held in "joint tenancy" or in "joint tenancy with right of survivorship" or other similar language. It further provides that if such designation is made in writing, the survivor or survivors of the depositor shall be the lawful owners. This authorization made at a bank is commonly referred to as a will substitute. In the present case there was no designation in writing by Herman Gibson. Section (e) of the statute states that if a person holding a certificate of deposit shall file with the bank a designation that on death the certificate shall be paid or held by another person, the bank shall be obligated to pay the proceeds to the survivor or deliver the certificate in lieu thereof. It is clear from the act and we have held that the depositor must designate the survivor in a separate writing, other than as payee, if the transaction is to be treated as one of joint tenancy with right of survivorship. *Cook* v. *Bevill,* 246 Ark. 805, 440 S.W. 2d 570 (1969); *Willey, Adm'r.* v. *Murphy,* 247 Ark. 839, 448 S.W. 2d 341 (1969). There must be at least substantial compliance with the designation in writing. *Carlton, Adm'r.* v. *Baker,* 267 Ark. 949, 591 S.W. 2d 696 (Ark. App. 1979). Therefore, if a purchaser desires a certificate of deposit be payabe to the named joint survivor, either he or his agent must so designate in writing at purchase or at a later date. All of the cases which have caused the problem have resulted from the failure of the purchaser or depositor to comply with the designation in writing provision of Ark. Stat. Ann. § 67-552 which is applicable to banks and Ark. Stat. Ann. § 67-1838 (Repl. 1980) which is applicable to savings and loan institutions.

Before entering into a point by point discussion we state that the law of the case is controlling. In the first decision in this matter we stated that appellants:

> ... had the burden of showing, by clear and convincing evidence, that these certificates were delivered to them by their father with the clear intent to make an immediate, present, final gift beyond recall, releasing all future dominion and control. It must have been the intention of the donor that title pass immediately, and a delivery for safekeeping or for any purpose, either express or implied, other than a specific intent to part with all right, title and interest in, and all dominion and control over the certificates would not constitute a gift.

The case was remanded for a new trial. Therefore, the parties were free to present any admissible evidence they desired at the second trial. We now take up the arguments of the appellants.

I.

APPELLANTS CONTEND THEY MET THE BURDEN OF PROOF TO SHOW THE CERTIFICATES OF DEPOSIT CONSTITUTED A VALID AND COMPLETE INTER VIVOS GIFT FROM THEIR FATHER.

We stated earlier that the first decision, *Boling* v. *Gibson,* supra, was the law of the case. There we held that on retrial the standard of proof required of appellants was that clear and convincing evidence must be produced in order to show that the father released all control of the certificates. The standard at trial is "clear and convincing" but the standard for review is "clearly erroneous." Therefore, before we reverse a chancellor or probate judge we must find that his decision was clearly erroneous. We note that the law of the case is not different from the precedent in other similar cases.

In the present case there is no argument that the CDs were issued to joint tenants with right of survivorship in

substantial compliance with Ark. Stat. Ann. § 67-552. The contention is rather that there was a completed inter vivos gift. We stated in the first opinion that CDs were subject to gift as were other chose in action or evidence of debt. *Boling* v. *Gibson,* supra; *Pyland* v. *Gist,* 177 Ark. 860, 7 S.W. 2d 985 (1928).

Appellants argue the court erred in failing to hold delivery of the CDs by the decedent to his son Wayne amounted to a gift inter vivos. There is no dispute between the parties that the law of the case is correct and controlling.

It is not contradicted that Herman Gibson delivered the CDs to his son Wayne. Neither is it contradicted that the CDs were payable to Herman Gibson or Merna W. Gibson or Cecil L. Gibson. On their face, certificates of deposit are nonnegotiable. Therefore, legal possession alone is not sufficient to transfer ownership. There can be no doubt that it was decedent's intention to make a gift of the certificates to his sons during his lifetime or at least upon his death. However, we cannot say from the record that the court clearly erred in finding the transactions in this case did not amount to an inter vivos gift. The testimony of Christabel Elliott is persuasive evidence. We are not unmindful that a majority of the witnesses who testified indicated that Ms. Elliott had told different stories at different times. Even aside from the testimony of this witness there was evidence upon which the chancellor could have based his finding. It is obvious that Herman Gibson did go into the Citizens Bank and sign his name to the box rented by his son. Whether this was in compliance with Wayne Gibson's instructions is beside the point in the sense that it reflects an intention on the part of Herman Gibson to have at least something to do about the contents in this safety deposit box. No one bothered to change the names of the payees on the CDs nor the address which was that of Herman Gibson's. Herman Gibson received, accepted and cashed interest checks on the CDs after he had delivered them to his son. None of the banks were notified that Herman Gibson was no longer the owner of the CDs. Neither was there any

designation in writing by the decedent indicating he had parted with ownership or control of the CDs. The appellants had a heavy burden to show by clear and convincing evidence that these CDs were delivered and met all of the conditions of a completed gift. We have held since 1899 that in order to be a gift inter vivos (in presenti) the gift must be accompanied with delivery of the property, or such delivery as the nature of the property will admit, and that as between the parties the gift has become irrevocable. *Williams* v. *Smith,* 66 Ark. 299, 50 S.W. 513 (1899). The definition of a completed gift inter vivos has changed very little over the years. See *Lowe* v. *Hart,* 93 Ark. 548, 125 S.W. 1030 (1910); *Hopson* v. *Buford,* 225 Ark. 482, 283 S.W. 2d 337 (1955); *Cook* v. *Bevill,* supra; *Carlton* v. *Baker,* supra; and *Willey* v. *Murphy,* supra.

Due to the nature of a certificate of deposit and the law relating thereto, the purchaser has the right during his lifetime to change the certificate and cause it to be payable to different parties or even to cash it in. Regardless of the fact that Wayne Gibson may have held both keys to the lockbox, the decedent still could have exercised control by going through the issuing banks. Therefore, the certificates of deposit were not beyond the control of the decedent, or at least the chancellor could have so found.

## II.

## THE CHANCELLOR ERRED IN DENYING THE PETITION FOR REHEARING AFTER THE DOWER LAWS OF ARKANSAS WERE DECLARED UNCONSTITUTIONAL.

The hearing in this case was concluded on May 22, 1980, and the decree entered in the chancery court on January 5, 1981. The decision in *Stokes* v. *Stokes,* 272 Ark. 300, 613 S.W. 2d 372 (1981), which invalidated dower on constitutional grounds, was rendered February 23, 1981. The constitutionality of the dower statute had not been raised in the trial below and was not considered by the chancellor in the first or the second trial. We have previously held that where an appellant failed to raise the issue of the constitutionality of

an Arkansas statute in the lower court, it could not be considered for the first time on appeal. *Wilson* v. *Wilson,* 270 Ark. 485, 606 S.W. 2d 56 (1980); *Gross* v. *Gross,* 266 Ark. 186, 585 S.W. 2d 14 (1979). It is true, as appellants say, that if the statute was as unconstitutional in 1980, it was also unconstitutional in 1976. The fact remains, however, that in this case the matter was not presented to the court until after rendition of the *Stokes* decision.

## III.

## THE CHANCELLOR ERRED IN ADMITTING THE DISCOVERY DEPOSITION OF A WITNESS WHO WAS PRESENT AND TESTIFIED.

We have not considered the discovery deposition of Christabel Elliott because the appellants are correct in stating that Ark. Stat. Ann. § 28-348 (Repl. 1979) prohibits the use of such deposition in the absence of certain findings which were not made in this case. This matter was specifically dealt with prior to the statute in the case of *Midland Valley Railroad Co.* v. *Ennis,* 109 Ark. 206, 159 S.W. 214 (1913). We have made the same holding since enactment of the statute. *Pickard* v. *Stewart,* 253 Ark. 1063, 491 S.W. 2d 46 (1973). Furthermore, the Rules of Civil Procedure, Rule 32, which became effective July 1, 1979, prohibits the use of depositions at trial except in certain instances not applicable to the present case. Apparently the appellee had no interest in this argument because it was not presented in his brief.

## IV.

## THE CHANCELLOR ERRED WHEN HE DECLINED TO ALLOW APPELLANTS TO INTRODUCE EVIDENCE OF INTENT ON THE PART OF THE DECEASED DONOR AT THE TIME HE DELIVERED THE CERTIFICATES OF DEPOSIT TO WAYNE GIBSON.

The solicitor's testimony was proffered and received into the record. Even if we consider the proffered testimony, it would not change the result in this case. The excluded testimony was evidence of a conversation between the

decedent and solicitor Gibson relating to the matter of handling the CDs. We agree with the statement of the appellants that the proffered testimony was really not needed; therefore, we will not belabor the point.

We do not find that the chancellor was clearly in error when he held that Herman Gibson did not make a present, complete, irrevocable and unconditional gift of the certificates of deposit. There was evidence that Herman Gibson still retained some elements of control. A gift which is not *in presenti* cannot be treated as a completed inter vivos gift.

Affirmed.

HICKMAN and HAYS, JJ., dissent.

STEELE HAYS, Justice, dissenting. If it is correct, as appellee argues and the majority agrees, that our law requires the negation of a gift under the circumstances of this case and, by so doing, deprives two sons of a gift intended by their father giving it instead to a virtual stranger, then that law should be reexamined and redefined.

The majority opinion concedes that there is no doubt but that the father's intention was to make a gift to his sons. He had the certificate issued in their names with his own and then actually delivered it to one of them with instructions that it was to be theirs. The requirements of the law were fully met by that delivery and the undisputed intent. In *Hopson v. Buford,* 225 Ark. 482, 283 S.W. 2d 337 (1955), we said:

> We have held in the case of *Williams v. Smith,* 66 Ark. 299, 50 S.W. 513, that, "if the gift be intended *in presenti,* and be accompanied with such delivery as the nature of the property will admit, and the circumstances and situation of the parties render reasonably possible, it operates at once, and, as between the parties, becomes irrevocable."

The law of gifts *inter vivos* seems to have changed interstitially from earlier years when it was said that the

essential elements were a competent donor, an accepting donee and actual delivery of the property with a present intent to make a gift. *Smith* v. *Van Dusen,* 235 Ark. 79, 357 S.W. 2d 22 (1962); *Carlson* v. *Carlson,* 224 Ark. 284, 273 S.W. 2d 542 (1954) (Rehearing denied January 10, 1955); *Aycock* v. *Bottoms,* 201 Ark. 104, 144 S.W. 2d 43 (1940); *Waid* v. *Waid,* 188 Ark. 590, 66 S.W. 2d 1052 (1934); and *Miles* v. *Monroe,* 96 Ark. 531, 132 S.W. 643 (1910).

Somewhere along the way the wording embraced in *Boling* v. *Gibson,* 266 Ark. 310, 584 S.W. 2d 14 (1979), was infused into the definition and permitted to overshadow the key element of the donor's intent:

> It must have been the intention of the donor that title pass immediately, and a delivery for safekeeping or for any purpose, either express or implied, other than a specific intent to part with all right, title and interest in, and all dominion and control over the certificates, would not constitute a gift.

The result is that greater emphasis is now placed on technical requirements and less on intention. That change may be valid where the gift is unnatural, but where, as here, the gift is consistent with the normal, almost universal, aim of parenthood to benefit its own offspring, then intent should be primary and technique secondary. It is interesting to note that the only case cited in *Boling* v. *Gibson* for that wording is *Lowe* v. *Hart,* 93 Ark. 548, 125 S.W. 1030 (1910), where this court upheld a gift of non-negotiated certificates of deposit handed by the deceased donor to his housekeeper, facts much less compelling than these.

Adherence to form has much to commend it. It is the surest part of the fabric of the law. But where it is at the expense of a fair and just end, it should give way to reason. The result reached below is clearly erroneous and I would reverse.

Justice HICKMAN joins in this dissent.