FERGUSON *v.* GUYDON.

Opinion delivered April 18, 1921.

1. ESTOPPEL—REPRESENTATION.—Where plaintiff informed defendant that he contemplated purchasing land and asked if defendant had a vendor's lien thereon, and defendant replied that he had not, and that plaintiff would be safe in purchasing it, and, relying upon that representation, plaintiff purchased the land, an equitable estoppel in plaintiff's favor was created.

2. ESTOPPEL—ELEMENTS OF EQUITABLE ESTOPPEL.—An equitable estoppel requires, as to the persons against whom the estoppel is claimed, opportunity to speak, duty to speak, failure to speak, and reliance in good faith upon such failure.

3. ESTOPPEL—EVIDENCE.—A finding of the chancellor that a' vendor told one purchasing from the vendee that he had no lien on the property *held* not against the preponderance of the evidence.

4. APPEAL AND ERROR—CONCLUSIVENESS OF CHANCELLOR'S FINDING.— A finding of fact by a chancellor will not be disturbed on appeal unless against the clear preponderance of the evidence.

Appeal from Monroe Chancery Court; *John M. Elliott,* Chancellor; affirmed.

STATEMENT OF FACTS.

Jesse Guydon brought this suit in equity against S. W. Ferguson and J. L. Simpson to set aside a decree in their favor against I. W. Carter in the same chancery court to foreclose a vendor's lien on certain property in the city of Clarendon, Monroe County, Arkansas, and to quiet his title in said property.

The defendants denied all the material allegations of the complaint, and defended on the ground that they had a vendor's lien on said property for the unpaid purchase money.

The material facts are as follows: Jennie Teasley owned the property in controversy and exchanged it to I. W. Carter for certain property owned by him. By his direction she executed a deed to the property to S. W. Ferguson and J. L. Simpson on February 12, 1919. She lived on the property at the time she executed the deed, and it was known as the Jack Brown place. In a few days Carter told her that he had bought the property back and wanted to sell it to Jesse Guydon. She saw Jesse Guydon and made an agreement to sell the place to him for $600. On the 24th day of February, 1919, S. W. Ferguson and J. L. Simpson conveyed said property to I. W. Carter and their wives relinquished their dower in the deed which recited that it was executed in consideration of $150 paid by I. W. Carter and $300 evidenced by his promissory note bearing interest at 10 per cent.

and due on the 20th day of November, 1919. The deed was duly filed for record on the same day. On the 24th day of February, 1919, I. W. Carter executed a deed to said property to Jesse Guydon, and it was filed for record on the 28th day of May, 1919. The deed recited a cash consideration of $200 and the balance in two notes for $100 and $300 due, respectively, on the 20th day of May, 1919, and the 20th day of November, 1919. The first note for $100 was duly paid by Jesse Guydon to I. W. Carter in person when it became due. The second note for $300 was paid by Jesse Guydon to Jennie Teasley for Carter about the time it became due.

According to the testimony of Jennie Teasley, when Jesse Guydon came to pay the second note, she asked Carter if he had paid Ferguson & Simpson all the purchase price for the place and found out that Carter owed a balance of $300 on the purchase money. She loaned Carter $50 and directed him to take this, together with $220 which Guydon had paid for him on the purchase price of the lots and go to Ferguson and finish paying for the lots. Carter left her house, and she watched him go toward Ferguson's store. That night he came back and showed her a receipt signed by S. W. Ferguson as follows: "Received of I. W. Carter in full up to date." Carter left town that night and has not been heard of since. He is reputed to be dead.

According to the testimony of Lee Guydon and Jesse Guydon, the former is the father of the latter. When Jesse Guydon began to negotiate for the purchase of the property in question from I. W. Carter, he learned that S. W. Ferguson had a vendor's lien upon it for the unpaid purchase money. The father and son approached Ferguson on the street and told him that the son contemplated purchasing the property from Carter and asked him if he had any lien on it. Ferguson replied that he did not have any lien on the property, and that they would be perfectly safe in purchasing it from Carter so far as he was concerned. Relying on this assurance from Ferguson, the son went ahead and completed his contract

for the purchase of the property. They did not find out that there was any lien on the property for the unpaid purchase money until they had finished paying for it in November, 1919, and Carter had left for parts unknown.

S. W. Ferguson was a witness for himself. According to his testimony, he did not know that Jesse Guydon had purchased the property in controversy from I. W. Carter and did not tell him and his father that he had no lien on the property for the purchase money. He and Simpson deposited the note which Carter gave them for the unpaid purchase money with a bank in the city of Clarendon as collateral security and paid their note to the bank in the early part of January, 1920. Carter never at any time paid them any part of the $300 note which he gave them for the balance of the purchase price for the property in question. After Carter left they brought a suit against him to foreclose their vendor's lien on the property and obtained service by the publication of a warning order on the ground, that he was a nonresident of the State. They obtained a decree of foreclosure prior to the institution of the present action. No personal service was obtained on Carter in that action, and Jesse Guydon was not a party to it.

The chancellor found the issues in favor of the plaintiff, and it was decreed that the lien retained in the deed executed by S. W. Ferguson and J. L. Simpson to I. W. Carter to the property in question be canceled, and that the title to said property should be quieted and confirmed in the plaintiff, Jesse Guydon, free from all claims of the defendants, S. W. Ferguson and J. L. Simpson, under and by virtue of the lien retained in their deed to I. W. Carter.

The defendants have appealed.

*Bogle & Sharp,* for appellants.

· The findings of the chancellor on the question of equitable estoppel are against the clear preponderance of the evidence. 97 Ark. 49; 65 N. W. 604; 83 Fed. 725-34; 21 C. J. 1120; 54 Ark. 499; 49 *Id.* 218. Ferguson is

not estopped by any misrepresentations of facts, as they did not exist at the time of the alleged misrepresentations. There must be a motive. 83 Fed. 733. There must be a false representation of existing facts or fraudulent concealment of same intended to be acted upon, and there was not. 16 Cyc. 726, 732; 53 Ark. 196; 54 *Id.* 508; 48 *Id.* 426; 18 Wall. 255, 271; 117 U. S. 567, 580; 2 Pom., Eq. Jur., 686-8; 89 Ark. 349-53; 93 U. S. 335.

The burden was on appellee to show that the note had been paid. 67 Ark. 69; 64 *Id.* 466; 123 *Id.* 261.

*Lee & Moore,* for appellee.

Appellee was misled to his injury and has suffered loss, and this constitutes equitable estoppel. 39 Ark. 131; 33 *Id.* 465; 48 *Id.* 409; 89 *Id.* 349. The rule as to equitable estoppel is well settled and sustained. 33 Ark. 465; 39 *Id.* 134; 125 *Id.* 150; 99 *Id.* 260; 128 *Id.* 409; 131 *Id.* 82.

The findings of the chancellor are sustained by the clear preponderance of the testimony.

HART, J. (after stating the facts). It may be stated at the outset that S. W. Ferguson and J. L. Simpson obtained a decree of foreclosure of the unpaid purchase money against I. W. Carter in the same chancery court in which the present suit is pending. This decree was obtained by the publication of a warning order against Carter, and the decree was entered of record before the present suit was instituted. Jesse Guydon was not a party to that suit and is in no wise bound by the decree entered therein. His rights must be determined by the record in the present case.

The record in the present case shows that the deed from S. W. Ferguson and J. L. Simpson to I. W. Carter was executed on the 24th day of February, 1919, and the deed recites unpaid purchase money in the sum of $300 due by Carter which is evidenced by his promissory note of the same date as the deed, and due on the 20th day of November, 1919. Jesse Guydon also obtained his deed from Carter on the 24th day of February, 1919.

According to the testimony of himself and his father, they had heard that S. W. Ferguson had a lien on the property. They met Ferguson on the street and asked him if he had a lien on the property for the unpaid purchase money, giving as a reason for asking that Jesse contemplated purchasing it. Ferguson replied that he had no lien, and that they would be safe in purchasing the property so far as he was concerned. This testimony, if true, is sufficient to create an equitable estoppel in favor of Jesse Guydon against the defendants, S. W. Ferguson and J. L. Simpson.

It has been well said that an equitable estoppel requires as to the persons against whom the estoppel is claimed, opportunity to speak, duty to speak, failure to speak, and reliance in good faith upon such failure. *Fagan* v. *Stuttgart Normal Institute,* 91 Ark. 141; *Cox* v. *Harris,* 64 Ark. 213; *Rogers* v. *Galloway Female College,* 64 Ark. 627; *Gill* v. *Hardin,* 48 Ark. 409, and *Thompson* v. *Wilhite,* 131 Ark. 77.

This rule was recognized in *Scott* v. *Orbison,* 21 Ark. 202, where the court held that if a vendor, having an equitable lien upon land for the purchase money, induces a third person to believe that he does not look to the land, but to other means for payment, and, in consequence thereof, he purchased the land, the vendor will be estopped from setting up his vendor's lien.

Again this rule was recognized in a vendor's lien case in *Wilson* v. *Shocklee,* 94 Ark. 301, but the estoppel was denied because the facts did not warrant its application. But it is strongly insisted that the evidence is not sufficient to warrant a finding in behalf of the plaintiff in this respect. Counsel for the defendants point to the fact that Ferguson in positive terms denied that he had made any such representations to Lee and Jesse Guydon, or that he would have any motive in saying that he had no vendor's lien on the property for the unpaid purchase money when, as a matter of fact, he did have such a lien.

There does not seem to have been any motive on either side to have deceived the other. It would have been easy for Jesse Guydon to have protected himself if he had known that Carter owed Ferguson $300 as a balance of the purchase money of the property. He could have seen that the money he paid Carter in November, 1919, was applied by the latter toward the payment of the unpaid purchase money due to Ferguson.

We are confronted with a finding in behalf of the plaintiff by the chancellor, and it can not be said that his finding is against the preponderance of the evidence. According to the uniform current of decisions in this State, the findings of fact made by a chancellor will not be disturbed on appeal unless they are against the preponderance of the evidence.

Therefore the decree will be affirmed.