Cecil H. DICKERSON, Jr. *v.* UNION NATIONAL
BANK OF LITTLE ROCK

80-32                                                    595 S.W. 2d 677
Supreme Court of Arkansas
Opinion delivered March 24, 1980

*Sanford L. Beshear, Jr.* and *Robert R. Wright,* for appellant.

*Phil Stratton* and *Clark & McNeil,* for appellee.

GEORGE ROSE SMITH, Justice. The principal question on this appeal is whether a trust created by the holographic will of Nina Martin Dickerson, who died on June 21, 1967, is void under the rule against perpetuities, because it is possible that the interest of the various beneficiaries may not vest within the period allowed by that rule. Cecil H. Dickerson, Jr., one of the testatrix's two sons, attacks the validity of the trust. The chancellor rejected Cecil's attack on two grounds; First, Cecil should have raised the question of the validity of the trust in the probate court in connection with the probate of the will and the administration of the estate. His failure to do so makes the issue res judicata. Second, on the merits, the trust does not violate the rule against perpetuities. We disagree with the chancellor on both grounds.

The facts are not in dispute. The testatrix was survived by her two children. Cecil, 50, was single, and Martin, 45, was married. At that time the two sons had a total of seven children, who of course were the testatrix's grandchildren.

The testatrix named the appellee bank as executor and directed that at the close of the administration proceedings the bank transfer to itself as trustee all the assets of the estate. The terms of the trust are long, but we may summarize them as follows:

The trust is to continue until the death of both sons and of Martin's widow, *who is not otherwise identified.* The income is to be divided equally between the two sons during their lives, except that Cecil's share is to be used in part to provide for a four-year college education for his two minor children, who are named, and for the support and education of any bodily heirs by a later marriage. When the two named minor children finish college, their share of the income is to revert to Cecil. Upon Martin's death his share of the income is to be paid monthly to his widow and children living in the home, but the share of each child terminates and passes to the widow when that child marries or becomes self-supporting.

The trustee is given discretionary power to make advance payments of principal in certain cases of emergency or illness. If either son and his wife and all his bodily heirs die before the final distribution of the trust assets, that son's share in the estate and in the income passes to the other son and then to his bodily heirs.

As far as the rule against perpetuities is concerned, the important part of the will is paragraph VIII, from which we quote:

> VIII. This Trust shall continue until the death of both my sons and my son Martin's widow and until the youngest child of either son has reached the age of twenty-five years, then at that time, the Trust shall terminate and the Union National Bank Trustee shall distribute and pay over the entire balance of the Trust Fund in their hands to the bodily heirs of my son, Cecil H. Dickerson, and the bodily heirs of my son William Martin Dickerson, in the same manner and in the same proportions as provided for by the general inheritance laws of Arkansas.

Upon the death of the testatrix in 1967, her will was presented to the Faulkner Probate Court by her son Cecil, who lived in Conway, Arkansas. (The other son, Martin, was living in Indiana.) The probate court entered a routine order reciting that the will had been properly executed, admitting the instrument to probate, and appointing the bank as executor, without bond. On May 31, 1968, the probate court entered another routine order approving the executor's first and final accounting, allowing fees to the executor and its attorneys, discharging the executor, and closing the administration of the estate. That order made no reference to the validity of the trust or to the manner in which the assets of the estate were to be distributed.

In fact, the assets of the estate, except for $18,000 set aside for administration expenses and estate taxes, had already been transferred by the bank to itself as trustee. On August 11, 1967, about a month after the probate of the will, the bank filed in the Faulkner Chancery Court an ex parte

"Declaration of Trust," in which the bank expressed its desire to perform the trust and asked the court to find and decree that it held the property in trust for the beneficiaries of the testamentary trust. No notice of that filing appears to have been given to anyone. On September 1, 1967, the bank filed a petition in the same ex parte case, asking for an interpretation of the will with respect to the distribution of income derived from capital gains. The court directed the bank to give notice of that petition to all persons interested in the trust estate. Counsel for the trustee certified that such notice of the hearing on the petition for interpretation had been given. On October 4 the chancery court entered an order reciting the appearance of the bank only, finding that the bank had been appointed as administrator of the estate and as trustee of the trust, authorizing the bank to transfer all the real and personal property (except $18,000) to the trust estate, and instructing the trustee as to the proper treatment of capital gains as trust income.

Nothing further appears to have taken place in the case until 1977, when Cecil Dickerson filed in the same proceeding the present complaint against the bank and its trust officer. The complaint, after reciting the background facts, asserts that the trust is void under the rule against perpetuities. The complaint charges the trust officer with violations of his fiduciary duties in failing to deliver all the assets of the estate to the heirs of the testatrix and in failing to ask the probate court to construe the will with respect to violations of the rule against perpetuities. The complaint charges that the trust officer concealed the trust's defects from the court and from the testatrix's two sons. The prayer is for an order restraining the trustee from making further transfers or distributions of the trust funds, for recovery of Cecil's half interest in the estate, for compensatory and punitive damages, and for other proper relief. The charges of negligence and wrongdoing on the part of the bank were later dismissed without prejudice. The other matters were heard upon stipulated facts, culminating in the degree dismissing Cecil's complaint on the two grounds we have mentioned.

First, there is no merit in the argument that Cecil's failure to challenge the validity of the trust in the probate

proceedings precludes him from raising that issue now. Under the Probate Code the probate court does have the power to construe a will, but the construction must be necessary to the determination of some issue properly before the court. Ark. Stat. Ann. § 60-416 (Repl. 1971). Here the probate court made no pertinent decisions except that Mrs. Dickerson's will had been properly executed and that at the end of the administration proceeding the estate should be closed. There was not even an order of distribution, because the trust assets had already been transferred by the bank to itself with the ex parte approval of the chancery court. Just as we said in an earlier case: "The [probate] court was not called upon to determine the validity of the fourth paragraph in Collie's will, for a decision of that issue was not essential to a distribution of the estate." *Collie* v. *Tucker,* 229 Ark. 606, 317 S.W. 2d 137 (1958).

The doctrine of res judicata is based upon the assumption that a litigant has already had his day in court. For that reason it applies to matters that were necessarily within the issues and might have been litigated in the former suit. *Crump* v. *Loggains,* 212 Ark. 394, 205 S.W. 2d 846 (1947); *Robertson* v. *Evans,* 180 Ark. 420, 21 S.W. 2d 610 (1929). Here the validity of the trust was not such a matter. The complications that may be presented by the rule against perpetuities are so numerous and difficult that even experienced lawyers and judges must usually consult the authorities to be certain about its application to a given set of facts. There was not the slightest reason for Cecil or Martin Dickerson to suspect a possible invalidity in their mother's testamentary trust, nor any duty on their part to raise such a question. To deprive them of their property on the basis of res judicata would actually be to deny them their day in court.

Indeed, if there was any duty on anyone to raise the issue, that duty rested on the bank. It was a fiduciary, both as executor and as trustee. It owed a duty of good faith and loyalty to all the beneficiaries of the estate and of the trust and a duty to act impartially as between successive beneficiaries. Restatement of Trusts (2d), §§ 170 and 232 (1959), and Arkansas Annotations (1939) to those sections. We do not imply any wrongdoing on the part of this appellee,

but it is certainly not in a position to ignore the possible invalidity of the trust both in the probate court and in the ex parte chancery court case and then take advantage, to its own pecuniary benefit, of the beneficiaries' similar course of conduct. A contrary rule would compel the beneficiaries of an estate or trust to hire a lawyer to watch the executor or trustee, when the law actually permits them to rely upon the fiduciary.

Second, the trust is void because there is a possibility that the estate will not vest within a period measured by a life or lives in being at the testatrix's death, plus 21 years. A bare possibility is enough. "The interest *must* vest within the time allowed by the rule. If there is any possibility that the contingent event may happen beyond the limits of the rule the transaction is void." *Comstock* v. *Smith,* 255 Ark. 564, 501 S.W. 2d 617 (1973).

The terms of this trust present an instance of the "unborn widow," a pitfall that if familiar to every student of the rule against perpetuities. This trust is not to terminate until the deaths of Cecil, Martin, and Martin's widow, but the identity of Martin's widow cannot be known until his death. Martin might marry an 18-year-old woman twenty years after his mother's death, have additional children by her, and then die. Cecil also might die. Martin's young widow, however, might live for another 40 or 50 years, after which the interests would finally vest. But since Cecil and Martin would have been the last measuring lives in being at the death of the testatrix, the trust property would not vest until many years past the maximum time allowed by the rule. The rule was formulated to prevent just such a possibility—uncertainty about the title to real or personal property for an unreasonably long time in the future.

The violation of the rule, except for the interposition of a trust, is actually so clear that the appellee does not argue the point. Instead, it insists that the property would vest in Cecil and Martin's bodily heirs at their deaths, with only the right of possession of the property being deferred until the termination of the trust.

This argument overlooks the fact that the words "bodily heirs" were used in the decisive paragraph VIII of the will not as words of limitation, to specify the duration of an estate granted to Cecil and Martin, but as words of purchase, to specify the persons who would take at the termination of the trust. Obviously the identity of those persons cannot be determined until the death of Martin's widow; so the ownership would not vest until that time.

A vested remainder, simply stated, is a present interest that cannot be defeated by any contingency. Such an interest can be transferred by deed, by will, or by inheritance, even though the right of possession may not accrue until some time in the future. The simplest example is a conveyance or devise to A for life, remainder to B. Since A must eventually die, B's remainder is a present vested interest which cannot be defeated by any contingency. As we said in *Hurst* v. *Hilderbrandt,* 178 Ark. 337, 10 S.W. 2d 491 (1928), in describing a vested remainder: "[T]here is some person *in esse* known and ascertained, who, by the will or deed creating the estate, is to take and enjoy the estate, and whose right to such remainder no contingency can defeat." To the same effect see *Steel* v. *Robinson,* 221 Ark. 58, 251 S.W. 2d 1001 (1952); *National Bank of Commerce* v. *Ritter,* 181 Ark. 439, 26 S.W. 2d 113 (1930); Restatement of Property, § 157, Comment *f* (1936).

Here the testatrix directed that at the termination of the trust the property be distributed as provided by the general inheritance laws of Arkansas. At the time of the deaths of Cecil and Martin it would be utterly impossible to say who would take, in the case we have supposed, at the death of Martin's young widow 50 years later. Under our law the surviving descendants would then take per capita if they were related to Cecil and Martin in equal degree, but per stirpes if in unequal degree. Ark. Stat. Ann. §§ 61-134 and -135 (Repl. 1971). If there were no surviving descendants of one brother, the entire property would go to the surviving descendants of the other. If there were no surviving descendants of either, the property would revert to the testatrix's estate and go to her collateral heirs. Thus it is really too plain for argument that the interest of every descendant (or "bodily heir") of Cecil or Martin would be contingent upon his surviving the death of

Martin's widow, at which time—and only at which time—the title would finally vest.

A subordinate issue, that of estoppel, is relied upon by the dissenting opinion. Cecil certainly did not represent that the trust, as distinguished from the will, was valid, nor did the bank nor anyone else rely to its detriment upon the supposed validity of the trust.

Reversed and remanded for further proceedings.

HICKMAN, J., dissents.

DARRELL HICKMAN, Justice, dissenting. I would not reach the question of the rule against perpetuities.

The appellant in 1967 personally filed a petition asking that the instrument be admitted to probate. Later he was notified a question was raised regarding an interpretation of the trust provision. The estate was finally closed.

The chancellor found the appellant was estopped to now question the document. Twelve years is a rather long time for one to wait to object to something one intiated and in effect approved in the first place. The chancellor's findings in this regard are not to be set aside unless clearly erroneous. *Ferguson* v. *Guydon,* 148 Ark. 295, 230 S.W. 260 (1921); Rules of Civil Procedure, Rule 52.