
SLIP OPINION

# ARKANSAS COURT OF APPEALS

DIVISIONS I & II
**No.** CV–14–891

|  |  |
|---|---|
| | **Opinion Delivered** June 17, 2015 |
| COVENANT PRESBYTERY<br>APPELLANT | APPEAL FROM THE MISSISSIPPI COUNTY CIRCUIT COURT, OSCEOLA DISTRICT [NO. CV-11-101] |
| V. | |
| FIRST BAPTIST CHURCH, OSCEOLA, ARKANSAS<br>APPELLEE/CROSS-APPELLANT | HONORABLE RANDY F. PHILHOURS, JUDGE |
| V. | |
| SUN TRUST BANK, AS TRUSTEE UNDER THE WILL OF STANLEY D. CARPENTER<br>APPELLEE/CROSS-APPELLEE | PETITION FOR REHEARING DENIED; SUBSTITUTED OPINION ISSUED |

## BRANDON J. HARRISON, Judge

This appeal presents a dispute between church entities about who takes what under a testamentary trust. The circuit court ruled for First Baptist Church. Covenant Presbytery appeals that decision. We agree with Covenant Presbytery and therefore reverse on direct appeal, which moots First Baptist's cross-appeal.

### I. *Facts*

Stanley Carpenter died testate in 1967. His last will and testament was administrated through the Mississippi County Probate Court, and the court appointed National Bank of Commerce in Memphis, Tennessee, as the executor and trustee of the

SLIP OPINION

estate. From 1967 to 2005, National Bank of Commerce managed some farmland that Carpenter owned at his death. The farmland is 238 acres located near Osceola, Arkansas. Since 2005, Sun Trust Bank has managed the farmland as National Bank's successor.

National Bank of Commerce distributed annual income produced from the farmland to Stanley Carpenter's family members—Ruth Carter Love, Carolyn Schabel, Mary Greenway, and Henry and Mae Carpenter—after the probate case closed in the late 1960s. By 2003, some of Carpenter's family members who were trust beneficiaries had died, and National Bank of Commerce distributed the farm's net income this way: (1) one-fourth to Carolyn Schabel; (2) one-fourth to Mary Greenway; (3) one-fourth to First Presbyterian Church of Osceola, Arkansas; and (4) one-fourth to First Baptist Church of Osceola, Arkansas. Carolyn Schabel is the only surviving family member who still receives net income from the farmland.

First Presbyterian Church of Osceola existed from the mid–1800s until April 2004, when it dissolved because of a decline in membership. The minutes of a church meeting reflect that all assets and property that had not previously been sold or distributed were to be transferred to Covenant Presbytery. Covenant Presbytery is the appellant. And in May 2004, Covenant Presbytery approved First Presbyterian's request to dissolve; a commission was appointed to receive any remaining assets of First Presbyterian Church.

After First Presbyterian's dissolution and the transfer of its assets to Covenant Presbytery, National Bank of Commerce began paying First Presbyterian's share of the farm income to Covenant Presbytery. First Baptist Church and Covenant Presbytery received cover letters, quarterly statements, and annual distribution checks from National

SLIP OPINION

Bank of Commerce and Sun Trust Bank showing how the farm income had been distributed. Covenant Presbytery received $14,000 in annual net-income distributions from 2004 to 2010.

A dispute arose between Covenant Presbytery and First Baptist over whether Covenant Presbytery could succeed to the interest of First Presbyterian Church under Carpenter's will. To resolve the dispute, in December 2011, Sun Trust Bank, acting as "Trustee under the Will of Stanley D. Carpenter," filed a Petition and Request for Instructions and Declaration of Rights against First Baptist Church and Covenant Presbytery. It asked the court to determine the rights and interests of First Baptist and Covenant Presbytery in the farmland (and its income) as "remainder beneficiaries" under the will's testamentary trust. The court was also asked to decide if Sun Trust had the discretion to sell the farm property and distribute the sale proceeds while Carolyn Schabel was still living. Soon thereafter, Sun Trust amended its petition to include the possibility that the Carpenter will created a charitable trust and joined the Arkansas Attorney General as a party under Ark. Code Ann. § 28-73-110(d). A flurry of claims, cross-claims, and counterclaims ensued.

After holding a bench trial and receiving posttrial briefs, the circuit court interpreted the terms of the trust and the will in its final order to mean the following:

> 2. [W]hen Stanley Carpenter executed his Last Will and Testament and created a testamentary trust . . . it was his intention to benefit two churches in Osceola, Arkansas, because he lived in Osceola. These two churches were the First Baptist Church of Osceola and the First Presbyterian Church of Osceola.
>
> 3. This Court finds that, after the congregation of First Presbyterian Church of Osceola voted to dissolve their church in 2004, they transferred

their church's assets to Covenant Presbytery, a division of the Presbyterian Church in America. The Court finds that First Presbyterian Church of Osceola, and the conference to which it belonged, no longer exists. The Court further finds that Covenant Presbytery, one of 81 regional divisions of the Presbyterian Church in America that includes churches in portions of Arkansas, Mississippi, Tennessee and Missouri, succeeded to the interests of the previous conference. After this transfer, Covenant Presbytery notified the original trustee in this matter, National Bank of Commerce, to direct future payments from the Carpenter Trust to Covenant Presbytery.

4. Because the First Presbyterian Church of Osceola no longer exists, this Court rules that it is appropriate to employ the doctrine of *cy pres* and name a new beneficiary for the interest of the Carpenter Trust previously held by the First Presbyterian Church of Osceola.

5. This Court, utilizing the doctrine of *cy pres*, reforms the Carpenter Trust to provide that any payments, distributions or property transferred by the trustee of the Carpenter Trust from the summer of 2011 forward, that would have otherwise been paid to the First Presbyterian Church of Osceola had it remained in existence, shall be transferred to First Baptist Church of Osceola. This Court hereby orders that any distributions of income or property held in the Carpenter Trust, that has accrued since the summer of 2011 or hereinafter, shall be paid by Sun Trust Bank or its successors, to First Baptist Church of Osceola. This Court finds that the intention of Stanley Carpenter was to benefit churches in his hometown of Osceola, rather than to benefit Covenant Presbytery, which did not exist at the time of his death and no longer administers a church in Osceola. In this regard, the Court agrees with the arguments of First Baptist Church of Osceola and relies on *Trott v. Jones*, 85 Ark. App. 526, 157 S.W.3d 592 (2004); *Lowery v. Jones*, 272 Ark. 55, 611 S.W. 2d 759 (1981); and *State v. Van Buren School District*, 191 Ark. 1096, 89 S.W.2d 605 (1946).

In essence, the circuit court found that Carpenter's last will and testament created a testamentary trust to benefit two churches in Osceola, Arkansas: First Baptist Church and First Presbyterian Church. The court also found that First Presbyterian Church no longer existed and that, by virtue of the *cy pres* doctrine, any payments, distributions, or property transferred by the trustee of the Carpenter Trust must be paid to First Baptist Church of Osceola. Covenant Presbytery appeals that decision on direct appeal.

First Baptist also filed a counterclaim against Sun Trust Bank alleging that it violated its fiduciary duty by sending payments to Covenant Presbytery. The circuit court denied the counterclaim.[1] First Baptist cross-appeals that decision.

## II. *Law*

We review probate cases de novo and affirm the circuit court's findings unless they are clearly erroneous or clearly against the preponderance of the evidence. *Taylor v. Woods*, 102 Ark. App. 92, 282 S.W.3d 285 (2008). The cardinal rule in construing a trust instrument is that the settlor's intentions must be ascertained. *Bailey v. Delta Trust & Bank*, 359 Ark. 424, 432, 198 S.W.3d 506, 512–13 (2004). In construing a trust, we apply the same rules that apply when construing wills. *Id*. And the main interpretive principle when reading wills is that the testator's intent (or the settlor, in the case of a trust) governs. *Id*. This intention is determined from viewing the four corners of the instrument, considering the language used, and giving meaning to all of its provisions, whenever possible. *Id*. This court will construe the words and sentences used in a will or trust in their ordinary sense to arrive at the testator's true intention. *Id*. To determine the intentions of the testator, we consider every part of the will. *Id*. Extrinsic evidence may be received on the issue of the testator's intent only if the will's terms are ambiguous. *Taylor, supra*. Whether there is an ambiguity is a matter of law. *Thinn v. Parks*, 79 Ark. App. 20, 83 S.W.3d 430 (2002). Absent a finding of ambiguity by the circuit court, testimony about the settlor's intent should not be considered. *Id*. When the terms of a

---

[1] First Baptist also filed a cross-claim against Covenant Presbytery seeking a judgment for the amount of trust distributions made to Covenant Presbytery, but the cross-claim was denied and is not on appeal.

trust are unambiguous, it is the circuit court's duty, and ours, to construe the written agreement according to the plain meaning of the language used. *Bailey*, *supra*.

A trust may have a definite beneficiary or may be a charitable trust under Ark. Code Ann. § 28-73-402 (Repl. 2012). A beneficiary is definite if the beneficiary can be ascertained now or in the future, subject to the rule against perpetuities. Ark. Code Ann. § 28-73-402(b). A charitable trust may be created for "the advancement of education or religion." Ark. Code Ann. § 28-73-405(a). "If the terms of a charitable trust do not indicate a particular charitable purpose or beneficiary, the court may select one (1) or more charitable purposes or beneficiaries. The selection must be consistent with the settlor's intention to the extent it can be ascertained." Ark. Code Ann. § 28-73-405(b).

We have mentioned that the circuit court applied *cy pres* to the testamentary trust. *Cy pres* is the "equitable doctrine under which a court reforms a written instrument with a gift to charity as closely to the donor's intention as possible, so that the gift does not fail." *Black's Law Dictionary* 415 (10th ed. 2014). Before the *cy pres* doctrine can be applied, however, a court must find that the settlor intended for a trust or devise to have its sole purpose be charitable, meaning that it achieves some public benefit. S*ee Lowery*, 272 Ark. at 56, 611 S.W.2d at 760 ("The will of Robert P. Frazier consists entirely of bequests for charitable purposes."); *Bosson v. Woman's Christian Nat'l Library Ass'n*, 216 Ark. 334, 335, 225 S.W.2d 336, 336 (1949) ("The question for determination is whether the trustees of a charitable trust may sell land owned and held for library purposes."); *State ex rel. Att'y Gen. v. Van Buren Sch. Dist. No. 42*, 191 Ark. 1096, 1099, 89 S.W.2d 605, 609 (1936) ("It is agreed by all parties that this is a charitable trust."); *see also Powhatan Cemetery, Inc. v.*

*Colbert*, 104 Ark. App. 290, 297, 292 S.W.3d 302, 308 (2009) (dealing with the failure of an "ancient" charitable trust). Simply put, *cy pres* is available for a court's use once it determines that the settlor's intent was charitable; this issue is naturally decided on a case-by-case basis. *Bosson*, *supra*.

### III. *Discussion*

In this appeal, we do not have to determine whether the language used by Stanley Carpenter in his last will and testament created a testamentary trust. In its answer to the Sun Trust petition, Covenant Presbytery admitted that it was a remainderman under the testamentary trust; and in its posttrial brief it stated, "there is no dispute in this case but that the Last Will & Testament of Carpenter created a testamentary trust." In its brief before this court, Covenant Presbytery stated: "The parties in this case do not dispute that Mr. Carpenter, who died in 1967, created a testamentary trust in his Will[.]" So the question before us is whether Stanley Carpenter's testamentary trust was a "charitable trust" and whether the circuit court was justified in applying the *cy pres* doctrine. We hold that there was insufficient evidence to find that Carpenter intended to create a charitable trust; we therefore reverse the circuit court.

We now turn to the instrument's terms to explain why we disagree with the circuit court's finding that Carpenter established a charitable trust. The Carpenter trust is a combination of a last will and testament and four codicils. The trust's terms state that Carpenter's relatives each received a one-fourth interest in the "net farm rents" for life and at the death of each the "said rents [were] to revert to [his] estate." Paragraph VII states:

> All the rest, residue and remainder of my estate I give, devise and bequeath in equal shares, and to each, an undivided one-half each, to the First

Presbyterian Church, Osceola, Arkansas, and the First Baptist Church, Osceola, Arkansas.

First Baptist says that the purpose of Carpenter's trust was to promote religion in the City of Osceola because the trust's two beneficiaries were charities and religious institutions. The record shows that Carpenter was a generous man, and his trust does contain a measure of charity. Yet the instrument's terms as a whole reveal that Carpenter gifted or bequeathed approximately forty-three items that were not charitable in nature, as Arkansas law uses the term of art. For example, he gifted at least two houses to faithful employees; he gave watches and guns to relatives and friends; he made numerous gifts of cash. And regarding the net income from the farmland, Carpenter divided it between four relatives during their respective lifetimes. As for Carolyn Schabel, the only surviving family member, she has received a share of farm-related income for decades. The circuit court's decision to apply *cy pres* to this instrument was an error because it is clearly against the preponderance of the evidence. A plain reading of the whole instrument does not show that Carpenter had a solely or purely charitable purpose when he created his testamentary trust.

When Carpenter died, First Presbyterian and First Baptist each received an undivided one-half interest in the farm that Carpenter owned and which Sun Trust holds in trust for their benefit. This legal interest is an undivided one-half indefeasibly vested remainder in fee simple. A vested remainder is a present interest held by a known and ascertained beneficiary that cannot be defeated by any contingency. *Dickerson v. Union Nat'l Bank of Little Rock*, 268 Ark. 292, 595 S.W.2d 677 (1980); *see also Hurst v. Hilderbrandt*, 178 Ark. 337, 10 S.W.2d 491 (1928). This interest can be transferred by

deed, by will, or by inheritance, although the right of possession may not accrue until sometime in the future. The simplest example of this conveyance or devise between people is to A for life, remainder to B. Because A must eventually die, B's remainder is a present vested interest that cannot be defeated by any contingency. *Dickerson*, *supra*. Both church entities existed when Carpenter died, and their interests vested when he died.

The parties stipulated that Covenant Presbytery was First Presbyterian's successor in interest; and First Baptist has not cross-appealed the court's finding that First Presbyterian "transferred their church's assets to Covenant Presbytery." Despite this stipulation, First Baptist argues here that Covenant Presbytery has no interest in the Carpenter trust because First Presbyterian failed to deed its interest in the farmland to Covenant Presbytery. First Baptist relies on Ark. Code. Ann. § 4-59-101(a)(4)(statute of frauds) and *Mobley v. Evans*, 2009 Ark. App. 348, 308 S.W.3d 165 (insufficient legal description in a deed) to support its argument.

We are not persuaded by First Baptist's argument for three reasons. One, First Presbyterian's assets could include the remainder of Carpenter's estate that is held in trust by SunTrust Bank, in which case it falls within the scope of the parties' stipulation. Second, the purpose of the statute of frauds is to protect the conveyor, which is First Presbyterian; the statute is not intended to protect third parties to the transaction like First Baptist. *See* Ark. Code Ann. § 4-59-101(a); *Betnar v. Rose*, 259 Ark. 820, 823, 536 S.W.2d 719, 721 (1976) (describing purpose of statute of frauds). Finally, First Presbyterian did not hold title to the property. Sun Trust Bank was the legal owner, so First Presbyterian could not convey its remainder interest by deed to Covenant Presbytery.

*See Little v. McGuire*, 113 Ark. 497, 501, 168 S.W. 1084 (1914) (trustee holds the legal interest).

IV. <em>Conclusion</em>

Because Carpenter's trust was not in the law's eyes a charitable one, the circuit court erred in applying the *cy pres* doctrine and ordering Sun Trust Bank to distribute to First Baptist any payments, distributions, or property transferred by the trustee of the Carpenter Trust that would have otherwise been paid to First Presbyterian. We reverse and hold that Covenant Presbytery is the successor in interest to First Presbyterian under the last will and trust of Stanley Carpenter. Our holding renders First Baptist's cross-appeal for breach of fiduciary duty and attorney's fees moot. *See McClard v. Smith*, 2014 Ark. App. 272 (decision on direct appeal may moot the cross-appeal).

Petition for rehearing denied; substituted opinion issued.

VIRDEN, HIXSON, GRUBER, WHITEAKER, and BROWN, JJ., agree.

*Sanford Law Firm, PLLC*, by: *Josh Sanford*, for appellant.

*Branch, Thompson, Warmath & Dale, P.A.*, by: *Robert F. Thompson III*, for appellee/cross-appellant First Baptist Church.

*Rose Law Firm*, by: *Craig S. Lair* and *Bourgon B. Reynolds*, for cross-appellee SunTrust Bank.

SLIP OPINION